**TEXAS DEPARTMENT OF TRANSPORTATION,**
Appellant,

v.

**Eddie W. NEEDHAM, Appellee.**

No. 03–00–00466–CV.

Court of Appeals of Texas, Austin.

March 29, 2001.

Katherine E. Kasten, Asst. Atty. Gen., Austin, for appellant.

Mark W. Robinett, Brim, Arnett & Robinett, John Judge, Judge & Brim, P.C., Austin, for appellee.

Before Chief Justice ABOUSSIE, Justices YEAKEL and PATTERSON.

ABOUSSIE, Chief Justice.

Appellee Eddie Needham sued appellant Texas Department of Transportation ("TxDOT"), alleging that TxDOT engaged in retaliatory discrimination against Needham in violation of the Texas Whistleblower Act. *See* Tex.Gov't Code Ann §§ 554.001 .010 (West 1994 & Supp.2001). The trial court rendered judgment on a jury verdict, awarding Needham damages for back pay, employment benefits, medical expenses, compensatory damages, and attorney's fees. TxDOT appeals, asserting that Needham adduced no evidence or insufficient evidence that TxDOT violated the Whistleblower Act. We will affirm the trial court's judgment.

## BACKGROUND

In 1996, Eddie Needham was employed by the information systems division of TxDOT, along with Bill Holt, Sam Garnett, Stephen Schmidt, Frank Howard, Leah Coffman, Barry Six, and Judy Skeen. Needham was a crew chief in the Geodetic Control Section of TxDOT. He traveled around the state with other TxDOT employees to perform global positioning surveys. Needham, Holt, Garnett, and Schmidt were members of the same crew; Garnett worked at the same level as Needham; Howard was Needham's immediate supervisor; Coffman was Howard's supervisor; and Skeen, as division head, was Coffman's supervisor. Six was a TxDOT supervisor who dealt with human resource matters.

On January 10, 1996, Needham and Stephen Schmidt were traveling to Austin from Orange, where they had been working on a project. The two stopped to spend the night in College Station. Upon arriving at their motel, Needham and Schmidt encountered another TxDOT crew consisting of William Holt, Jesse Pospisil, and Sam Garnett, who was supervising that crew. The two crews decided to eat dinner together. Schmidt and Needham drove together to the restaurant, as did Garnett and Pospisil. Holt, driving a separate, radio-equipped TxDOT vehicle, made radio contact and asked for directions to the restaurant. Needham testified at trial that Holt's voice was slurred and that Holt was weaving as he walked into the restaurant. Needham also testified that, at dinner, Holt's breath smelled of alcohol. From these observations, Needham concluded that Holt was intoxicated. After the meal, Needham instructed Schmidt to drive Holt's vehicle back to the motel for Holt because Needham believed Holt was too drunk to drive.

Needham testified that he did not immediately report Holt's conduct because he believed that the situation was the responsibility of Garnett, Holt's immediate supervisor, and because he feared retaliation. Needham first reported Holt's conduct to Lewis Keller, a supervisor at the same organizational level as Frank Howard, on February 23, 1996. That morning, Needham met with Keller to discuss the feasibility of transferring to Keller's section. During the meeting, Needham also sought Keller's advice about Holt's conduct in College Station. Keller consulted the State Human Resources Manual and informed Needham that the manual required him to report the incident to his immediate supervisor.

That afternoon, Needham met with Frank Howard, discussed the possibility of transferring to Lewis Keller's department, and told Howard about the incident involving Holt. After their meeting concluded, Needham testified that he observed Howard go to Leah Coffman's office.

On March 1, 1996, Needham talked to Leah Coffman and expressed concerns he had about Holt's lack of productivity, about the possibility of a transfer, about Stephen Schmidt's slow work pace, and about Frank Howard's supervisory practices. Needham testified that he did not mention Holt's alleged drinking and driving incident at that time because he had already told Lewis Keller and Howard about the incident. That same day, Needham testified that Schmidt came into Needham's office and told Needham that he was being discussed in Coffman's office. Needham revisited the issue of Holt's drinking and driving incident with Keller that day because of his perception that nothing was being done about the situation. This time, Keller advised Needham to talk to Barry Six, who dealt with human resource issues. Keller called Six and scheduled an appoint-

ment; Needham met with Six later that afternoon.

Needham testified that when he met with Six, he started to tell him about Holt's conduct but Six responded that he already had information about the incident and that management was deciding what to do about it. Needham testified that he asked Six if there was anything else he should do and that Six answered that Needham had done everything correctly.

Needham became sick with the flu from March 4 through March 6, 1996, when he returned to work and again spoke to Barry Six about Holt's conduct in College Station. Needham subsequently had a relapse of the flu and stayed home until March 11.

On March 11, 1996, Needham returned to work and was escorted by Leah Coffman into Barry Six's office for questioning about his travel and work assignment practices. A week later, on March 18, 1996, Howard entered Needham's office and told Needham he needed to go to Judy Skeen's office. Howard accompanied Needham to Skeen's office, where Teri Bomberger and Leah Coffman were waiting. Six also entered the room. Howard gave Needham a progressive disciplinary action document, in which Needham was charged with thirteen violations of TxDOT policies and procedures. The specific allegations were as follows:

(1) Purchasing gasoline at commercial gas stations rather than TxDOT facilities and encouraging other employees to do so.

(2) Claiming full per diem for meals when actual amount spent was less and encouraging other employees to do so.

(3) Abandoning ISD and District employees while occupying points in isolated areas with no transporta-

tion, shelter, food/water, or restroom facilities.

(4) Requiring employees to work hours other than 8:00 a.m.—5:00 p.m. when not necessitated by high traffic volumes, satellite window, etc.

(5) Asking employees to do "personal favors" (rebuilding carburetor, repairing Roto–Tiller, etc.) during work hours.

(6) Failure to stamp monuments, write descriptions, and survey in newly placed monuments.

(7) Failure to ensure correctness of hours reported on employees' Time Sheets.

(8) Failure to file work schedule forms for yourself and employees with ISD Personnel Office.

(9) Failure to report employee's suspected substance abuse to ISD Substance Control Officer.

(10) Failure to inform employee suspected of substance abuse of EAP benefits.

(11) Traveling unnecessarily from Beaumont/Orange to College Station with no TxDOT business to conduct and securing lodging on January 10, 1996 instead of returning to Austin headquarters and encouraging other employee to do so.

(12) Angry outburst on March 1, 1996 with two coworkers in the office regarding their ability to process data.

(13) Failure to notify supervisor of absence from office on March 5, 6, and 7, 1996.

Based on theses allegations, Needham was demoted a salary group and placed on probation for twelve months. Needham testified that he was shocked and devastated upon receiving these charges because he had never received any kind of reprimand in twenty-three years of work.

Needham sued TxDOT, alleging violations of the Texas Whistleblower Act, breach of contract, and intentional infliction of emotional distress. The case went to trial before a jury and the jury found in favor of Needham. TxDOT subsequently filed a motion for judgment *non obstante veredicto* ("JNOV"). The trial court denied TxDOT's motion, granted Needham's motion for judgment on the verdict, and on April 18, 2000, signed the judgment in favor of Needham. TxDOT thereafter filed a motion for new trial, which was overruled by operation of law. In response to TxDOT's request, the trial court filed findings of fact and conclusions of law. TxDOT filed a request for additional findings of fact and conclusions of law; the court, however, did not provide any additional findings of fact or conclusions of law. TxDOT now appeals the final judgment of the trial court as well as the court's failure to submit additional findings of fact or conclusions of law.

## DISCUSSION

### Standard of Review

TxDOT asserts that the trial court erred in denying TxDOT's motion for JNOV because there is no legally or factually sufficient evidence to support a judgment that TxDOT violated the Whistleblower Act. Because a court may render JNOV if a directed verdict would have been proper, *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex.1991), we review the trial court's ruling under the same standard we use to review a request for a directed verdict.

A judgment notwithstanding the verdict is proper only if there is no evidence to support the jury's findings and the issue is conclusively established as a matter of law.

*Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex.1990). In reviewing the denial of such a motion, we review the evidence in the light most favorable to the jury findings, considering only the evidence and inferences that support them, and disregarding all evidence and inferences to the contrary. *Navarette v. Temple Indep. Sch. Dist.*, 706 S.W.2d 308, 309 (Tex.1986). If there is more than a scintilla of evidence to support the findings, the motion for JNOV was properly denied. *Mancorp*, 802 S.W.2d at 228.

To review the evidence under a legal sufficiency or no-evidence point, we look at only the evidence which tends to support the judgment, regardless of whether we apply the standard of review for a directed verdict, the standard for a JNOV, the standard for a motion for new trial, or abuse of judicial discretion. *See Long Island Owner's Ass'n v. Davidson*, 965 S.W.2d 674, 680 (Tex.App.—Corpus Christi 1998, pet. denied). If there is more than a scintilla of evidence to support the jury's finding, we must affirm the jury's finding and the trial court's denial of TxDOT's motion. *Id.* The evidence supporting a finding amounts to more than a scintilla if reasonable minds could arrive at the finding given the facts proved in the particular case. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995).

On the other hand, when reviewing a jury verdict to determine the factual sufficiency of the evidence we must consider and weigh all the evidence, and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). We will not substitute our judgment for that of the trier of fact merely because we might reach a different conclusion. *Westech Eng'g, Inc. v. Clearwater Constructors,*

*Inc.*, 835 S.W.2d 190, 196 (Tex.App.—Austin 1992, no writ).

### Texas Whistleblower Act

■ A governmental employer violates the Whistleblower Act if the employer suspends or terminates the employment of, or takes other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement agency. Tex.Gov't Code Ann. § 544.002(a) (West Supp.2001). By its first issue, TxDOT argues that Needham's telling his supervisors at TxDOT about Holt's driving under the influence did not constitute a good faith report of a violation of law to an appropriate law enforcement authority.

### *"Good Faith"*

■ "Good faith," as used in the Whistleblower Act, means that (1) the employee believed that the conduct reported was a violation of law, and (2) the employee's belief was reasonable in light of the employee's training and experience. *Wichita County v. Hart*, 917 S.W.2d 779, 784 (Tex.1996). The first part of the definition is a subjective analysis, requiring that the employee have believed that he was reporting an actual violation of law. *Id.* at 784–85. The second part of the definition applies an objective component and ensures that, even if the reporting employee subjectively believed that the reported act was a violation of law, an employer that takes prohibited action against the employee violates the Whistleblower Act only if a reasonably prudent employee in similar circumstances would have believed that the facts as reported were a violation of law. *Id.* at 785.

Needham testified at trial that when Holt's voice came over the radio on January 10, 1996, his voice was slurred. When

both TxDOT crews arrived at the restaurant that night, Needham recognized Holt's vehicle by the numbers on the side of the vehicle and saw Holt exit the vehicle. Needham testified that Holt was "definitely weaving" as the group walked into the restaurant and that Needham smelled alcohol on Holt's breath during dinner. After the meal, Needham directed Stephen Schmidt to drive Holt's vehicle back to the motel. At trial, Holt himself testified that he had a drink in the motel prior to leaving for dinner and also had a glass of wine during dinner. At trial, Schmidt testified that Holt was "slightly tipsy" and that "his speech was slurred."

"The jury is the exclusive judge of the facts proved, the credibility of the witnesses and the weight to be given to their testimony." *Dyson v. Olin Corp.*, 692 S.W.2d 456, 458 (Tex.1985) (quoting *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796 (1951)). The jury, as the trier of fact, may also draw inferences from the facts and choose between conflicting inferences. *Ramo, Inc. v. English*, 500 S.W.2d 461, 467 (Tex.1973). We cannot overturn the fact finder's ruling unless only one inference can be drawn from the evidence. *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 461 (Tex.1992). From the evidence adduced through the course of trial, the jury was entitled to infer that Needham subjectively believed Holt had been drinking and driving in violation of the law. Furthermore, the jury could also come to the conclusion that a reasonably prudent employee in similar circumstances would have believed that, based on the facts as Needham reported them, Holt had driven under the influence. Thus, Needham produced evidence that satisfied the element of "good faith" in section 554.002(a).

*"Report"*

TxDOT also argues that Needham's actions did not constitute a "report"

as required by the Whistleblower Act. In support of its argument, TxDOT cites *Clark v. Texas Home Health, Inc.*, 971 S.W.2d 435, 438 (Tex.1998), in which the supreme court stated, "We do not suggest that informing an employer of a reportable incident is a 'report.'" *Clark*, 971 S.W.2d at 438 (citing *City of Beaumont v. Bouillion*, 896 S.W.2d 143 (Tex.1995)).

In *Bouillion*, the plaintiff police officers believed that the Beaumont city manager was violating the city charter by appointing nonresidents instead of residents to fill department positions. Several police officers held a press conference to voice their concerns. In response to the press conference, the city manager scheduled a series of executive meetings with the police force; the officers arrived at one such meeting with an attorney and court reporter, but failed to report any violation of law. The officers were reprimanded two days later for inviting the attorney and court reporter to the executive staff meeting. *Id.* at 144–45.

This Court has previously noted, "In *Bouillion*, the supreme court held that the media is not an appropriate law enforcement authority under the Act. The court did not address statements made at a public meeting, and nothing in the Act excludes such statements from constituting a report of a violation of law." *City of Brenham v. Honerkamp*, 950 S.W.2d 760, 767 (Tex.App.—Austin 1997, pet. denied) (citations omitted). Furthermore, the supreme court in *Bouillion* stated, "Had [the police officers] reported an illegal act to the city manager and had they proved that there was, in fact, a suspension, discharge or discrimination caused by their report, the Whistleblower Act would have provided the officers with an adequate remedy." *Bouillion*, 896 S.W.2d at 146. Under the facts, however, "the officers' meeting with the City Manager [did] not bring their

complaint within the realm of the Whistle-blower Act." *Id.*

 In the present case, we cannot say that Needham's numerous meetings with his supervisors failed to bring his complaint within the realm of the Whistleblower Act. Evidence in the record indicates that Needham actively reported Holt's conduct to his supervisors and subsequently followed-up his initial report to see if anything was being done. Because we do not believe the Whistleblower Act precludes a complaint to an employer from constituting a report of a violation of law, because the Whistleblower Act is remedial in nature and should be liberally construed, *Stinnett v. Williamson County Sheriff's Dep't*, 858 S.W.2d 573, 575 (Tex.App.—Austin 1993, no writ), and because the record contains sufficient evidence for us to so conclude, we hold that Needham's actions constituted a "report" for purposes of the Whistleblower Act.

*"Appropriate Law Enforcement Authority"*

 Under the pre-codified version of the Whistleblower Act, the term "appropriate law enforcement authority" was undefined. *See* Act of May 22, 1993, 73d Leg., R.S., ch. 268, sec. 1, § 554.002, 1993 Tex.Gen.Laws 583, 610 (Tex.Rev.Civ.Stat. Ann. art. 6252–16a, sec. 2, since repealed and codified at Tex.Gov't Code Ann. § 554.002 (West Supp.2001)). The current statute was codified in 1995 and subsection (b) was added to section 554.002, which states:

(b) In this section, a report is made to an appropriate law enforcement authority if the authority is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to:

(1) regulate under or enforce the law alleged to be violated in the report; or

(2) investigate or prosecute a violation of criminal law.

Tex.Gov't Code Ann. § 554.002(b). In determining whether a report was made to an appropriate law enforcement authority, we look at the entity that received the report, rather than the specific individual to whom the report was made. *Robertson County v. Wymola*, 17 S.W.3d 334, 340 (Tex.App.—Austin 2000, pet. denied). TxDOT argues that because there is no evidence that TxDOT can regulate under or enforce the penal code, or investigate or prosecute a violation of criminal law, Needham's report was not made to an appropriate law enforcement authority.

In an early case, the Fifth Court of Appeals addressed the undefined term "appropriate law enforcement authority" under the pre-codified version of the Whistleblower Act. *See City of Dallas v. Moreau*, 697 S.W.2d 472 (Tex.App.—Dallas 1985, no writ). In *Moreau*, the court held that an appropriate law enforcement authority must have (1) the power and the duty under the law to decide disputes concerning the lawfulness of the matter being reported; (2) the power and the duty to order a halt or a change in the matter reported; (3) the power to legislate or regulate with respect thereto; or (4) the power to arrest, prosecute, or otherwise discipline on account of an alleged violation being reported. *Id.* at 474.

TxDOT argues that in amending the statute, the legislature eliminated the first two categories enumerated in *Moreau* from the definition of "appropriate law enforcement authority," and retained only the last two. Assuming arguendo, that TxDOT is correct, an appropriate law enforcement authority can only be an entity with the power to legislate or regulate

with respect to the lawfulness of the matter being reported, or the power to arrest, prosecute, or otherwise discipline on account of an alleged violation being reported. Under TxDOT's reasoning, however, we conclude that Needham's report to TxDOT was to an appropriate law enforcement authority because the record indicates that TxDOT has the power to "otherwise discipline on account of an alleged violation being reported."

Under TxDOT's progressive disciplinary action policy, problems warranting disciplinary action include "[a]buse of work rules, abuse of substance abuse rules, or ethics," "[i]llegal activities, such as theft or misuse of state-owned, leased, or controlled property, committed while carrying out official duties," and "[b]ehavior problems occurring during work hours that are related to use of alcohol and substance abuse." The policy further states, "When an employee fails to meet behavior or performance standards, the employee's supervisor will follow the principles of progressive disciplinary action outlined in this policy." As shown by its disciplinary action policy, TxDOT has the power to discipline an employee on account of an alleged violation being reported; TxDOT thus qualifies as an appropriate law enforcement authority under the fourth category elucidated in *Moreau*. *See id.*

■ Of pivotal importance to the analysis under the codified version of the Whistleblower Act is the "good faith" belief on the part of the reporting employee that the entity to which he reports has the authority to regulate under or enforce the law, or investigate or prosecute a violation of criminal law. The term "good faith" is used twice in section 554.002. As previously discussed, "good faith" as used in section 554.002(a) means that the employee subjectively believed that the conduct reported was a violation of law, and that the

employee's belief was objectively reasonable. "Statutory terms should be interpreted consistently in every part of an act." *Dallas Indep. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 228 (Tex.App.—Dallas 2000, pet. filed). We accordingly interpret "good faith" in section 554.002(b) consistently with that term's definition in section 554.002(a). Thus, under section 554.002(b), a report is made to an appropriate law enforcement authority if the employee subjectively believes that the authority to whom he reports is authorized to regulate under or enforce the law alleged to be violated in the report, or to investigate or prosecute a violation of criminal law, and such belief is objectively reasonable.

The record demonstrates that Needham initially went to Lewis Keller to report Holt's conduct because Keller was a person in a position of authority. Based on information in the human resources manual, Needham then reported Holt's conduct to Frank Howard, Needham's immediate supervisor. After what Needham perceived to be inaction regarding his report, he returned to Keller who then advised Needham that Barry Six was the appropriate person to whom he should report the incident. The jury was entitled to infer from such evidence that by searching out the proper individuals to whom he should report Holt's conduct to, Needham subjectively believed that the individuals he sought out were authorized to regulate or investigate under the law or to investigate a violation of criminal law. Furthermore, evidence that Needham was told by individuals in positions of authority to whom he should report Holt's conduct reinforces the reasonableness of Needham's belief that the individuals to whom he was reporting were appropriate law enforcement authorities. Because we determine that a jury could have found Needham's report of

Holt's conduct constitutes a good faith report of a violation of law to an appropriate law enforcement authority, and we conclude that the trial court correctly denied TxDOT's motion for JNOV on such grounds, we overrule TxDOT's first and second issues.

*Causation*

■ The Whistleblower Act provides for a rebuttable presumption of retaliation if the adverse personnel action complained of is taken against the employee within ninety days of making the report. Tex. Gov't Code Ann. § 554.004(a) (West Supp. 2001). The trial court submitted an instruction accompanying jury question number one, which stated: "An adverse employment action taken not later than 90 days after the employee reports a violation of law is presumed, subject to rebuttal, to be because the employee made the report." By its fourth issue, TxDOT argues that because Needham failed to prove that his allegations caused his demotion, and because the above presumption was dissolved by TxDOT's evidence that it would have pronounced the same disciplinary action on Needham whether or not he had reported Holt's conduct, the court erred by including the presumption in the jury charge. We first address the issue of causation.

■ The Texas Supreme Court in *Texas Department of Human Services v. Hinds*, 904 S.W.2d 629 (Tex.1995), defined the proper causation standard for establishing liability in whistleblower cases. In *Hinds*, the court explained that the Whistleblower Act does not require an employee to prove that his reporting illegal conduct was the *sole* reason for his employer's adverse actions. *Id.* at 634. Instead, "the employee's protected conduct must be such that, without it, the employer's prohibited conduct would not have occurred when it did." *Id.* at 636. We have de-

scribed this standard of causation as a "but for" causal nexus requirement. *Texas Natural Res. Conserv. Comm'n v. McDill*, 914 S.W.2d 718, 723 (Tex.App.—Austin 1996, no writ). A plaintiff must present some evidence to support the conclusion that an adverse employment decision would not have been taken had the employee not in good faith reported illegal conduct. *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 68 (Tex.2000); *Hinds*, 904 S.W.2d at 633.

■ Circumstantial evidence may be sufficient to establish a casual link between the adverse employment action and the reporting of illegal conduct. *Zimlich*, 29 S.W.3d at 69; *Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996). Such evidence includes: (1) knowledge of the report of illegal conduct, (2) expression of a negative attitude toward the employee's report of the conduct, (3) failure to adhere to established company policies regarding employment decisions, (4) discriminatory treatment in comparison to similarly situated employees, and (5) evidence that the stated reason for the adverse employment action was false. *Zimlich*, 29 S.W.3d at 69.

*Knowledge of the Report of Illegal Conduct*

The evidence in the record establishes that Lewis Keller, Frank Howard, Barry Six, Leah Coffman, Teri Bomberger, and Judy Skeen all had knowledge of Needham's report of Holt's alleged drinking and driving. Needham reported the incident to Keller on January 10, and again on March 1; to Howard on February 23; to Six on March 1 and March 6; testimony varies as to whether Coffman learned of the report on February 23 or March 7; Bomberger learned of the report on March 7; and Skeen, who testified that she was the one who made the final, ultimate decision with regard to what disciplinary ac-

tion would be taken against Needham, had knowledge of Needham's report on March 7.

*Expression of Negative Attitude Toward Employee's Report of Illegal Conduct*

Needham's testimony also revealed an expression of negative attitude toward his report of Holt's conduct. Needham testified that when he made the report to Frank Howard, Howard gave Needham "only an expression." Needham testified, "I didn't get a single word from him regarding that topic."

*Failure to Adhere to Established Company Policies and Discriminatory Treatment in Comparison to Similarly Situated Employees*

The evidence adduced at trial also shows a failure on TxDOT's part to adhere to established policies regarding employment decisions. Leah Coffman testified as to the typical steps taken in a case of progressive disciplinary action; such steps include an oral reprimand, a written reprimand, and finally, suspension without pay, probation, or termination. Coffman testified that Needham did not receive an oral reprimand, a written reprimand, or a suspension without pay for any of the thirteen charges against him before the March 18, 1996 meeting, in which he was immediately disciplined with a demotion and probation. Coffman also testified that Stephen Schmidt was charged with allegations similar to those leveled against Needham, namely, purchasing gas at commercial stations instead of TxDOT facilities, claiming full per diem for meals when the actual amount spent was less, and time sheet violations, but that Schmidt, unlike Needham, received a written reprimand instead of being demoted or put on involuntary probation. The evidence also reveals that Holt confessed to per diem abuses but received only a written reprimand and was not demoted or put on probation.

TxDOT employee Charles Joseph testified that he had never heard of an employee being subject to sudden discipline involving probation, demotion, or a cut in pay without advance warnings, oral reprimands, or efforts at mediation. Lewis Keller similarly testified that he had never heard of a TxDOT employee being subject to immediate disciplinary action because of suspicions about how he handled his per diem reimbursement for meals or because a supervisor did not like the route that the employee took home. Sam Garnett admitted that Needham was the only TxDOT employee Garnett knew of who was disciplined for asking subordinate employees to work irregular hours. Such evidence is sufficient circumstantial evidence of discriminatory treatment in comparison to similarly situated employees.

*Evidence that Stated Reason for Adverse Employment Action was False*

Finally, we turn to evidence that the stated reason for the adverse employment action was false. Needham was purportedly demoted, placed on probation, and received a decrease in salary because of the thirteen allegations addressed in the disciplinary action form. Yet, the record contains evidence tending to support Needham's contention that he was not guilty of twelve of the allegations. Needham denied all allegations save number ten, the failure to inform Holt about the availability of the Employee Assistance Program for employees with substance abuse problems; Needham testified he failed to inform Holt about such program because he was unaware the program existed. Former TxDOT employees called by Needham's could not corroborate any of the remaining charges against him. Other retired TxDOT employees characterized TxDOT's allegations against Needham as "absurd" and the subsequent disciplinary action as "absolutely, totally ridiculous."

The record also contains evidence that Needham's job performance was never questioned or criticized until almost immediately after making his report about Holt's conduct. Leah Coffman conceded during cross-examination that concerns about Needham's job performance were first raised on February 23, 1996, the same day that Needham reported Holt's conduct to Frank Howard. In sum, we conclude that the circumstantial evidence offered is sufficient to support a jury finding that Needham's report of Holt's conduct caused the adverse employment action taken by TxDOT.

We next address TxDOT's contention that it rebutted the statutory presumption that an adverse employment action taken within ninety days of an employee's report of a violation of law constitutes retaliation.

### Comment on Weight of Evidence

■ TxDOT argues that the court improperly commented on the evidence by including an instruction on the statutory presumption because the presumption had been conclusively rebutted by evidence that TxDOT would have taken the same disciplinary action against Needham regardless of whether he had reported Holt's alleged drinking and driving.

■ A party is confined to the jury-instruction objection made at trial; any variant complaint on appeal is waived. *Lakeway Land Co. v. Kizer*, 796 S.W.2d 820, 825 (Tex.App.—Austin 1990, writ denied). In addition, the grounds underlying the trial objection must be stated specifically enough to support the conclusion that the district court was fully cognizant of the ground of the complaint and deliberately overruled it. *Id.* At trial, TxDOT objected to the jury charges as follows:

> Defendants object to Question No. 1 to the Charge of the Court, the phrase 'under the influence of alcohol.' I believe that would be confusing to the jury.

Additionally, I believe that the question is worded improperly. It does not reflect the proper causation, which the Plaintiff is required to prove.

TxDOT's complaint on appeal is distinctly different from its trial objection. Further, because the record is devoid of any evidence that TxDOT objected to the jury instruction of which it now complains, TxDOT waived its complaint challenging the jury instruction. Tex.R.App.P. 33.1(a). We thus overrule TxDOT's fourth issue.

### Standard of Causation Presented in Jury Question

■ By its third issue, TxDOT argues that the trial court erred in submitting question number one to the jury because it did not present the proper standard of causation. Question number one asked whether Needham's report was "a cause of [TxDOT's] adverse employment actions of March 18." To preserve error, TxDOT was required to make a written request to the court for a substantially correct version of the instruction to which they proffered an objection. *See* Tex.R.Civ.P. 278; *Hinds*, 904 S.W.2d at 637. Although the charge conference reflects that there may have been some written submissions tendered, no such submissions are in the record before us. The only evidence in the record on which we can review TxDOT's complaint is the charge conference.

During the conference, TxDOT's counsel objected, "I believe we need a burden of proof instruction. And I also have a—an instruction I would like to tender to the Court." After objecting, TxDOT's counsel apparently read aloud his requested instruction, "You are instructed that Eddie Needham has the burden to prove his report of alleged discrimination was a cause of his demotion on March 18th, 1996." Because TxDOT's tendered request presented the same standard of causation in-

cluded in the court's charge to the jury, TxDOT has no error to complain of on appeal. We overrule TxDOT's third issue.

### Additional Findings of Fact and Conclusions of Law

■ In response to TxDOT's original request for findings of fact and conclusions of law, the trial court responded as follows:

> The Court finds and concludes that the plaintiff reported a violation of law to appropriate law enforcement authorities, and that the defendant took adverse personnel action against the plaintiff in retaliation for the reports.

TxDOT subsequently filed a request for additional findings of fact and conclusions of law, to which the trial court did not respond. By its fifth issue, TxDOT argues that the court erred by not responding to TxDOT's request for additional findings of fact and conclusions of law, specifically its request that the court find that "a public employee's immediate supervisor is 'an appropriate law enforcement authority' as defined in Sec. 554.002(b) of the Texas Government Code."

■ The court shall file any additional findings and conclusions that *are appropriate* within ten days after a request is filed. Tex.R.Civ.P. 298; *Johnston v. McKinney Am., Inc.,* 9 S.W.3d 271, 277 (Tex.App.—Houston [14th Dist.] 1999, pet. denied). If the record shows that the complaining party did not suffer injury, the failure to make such additional findings does not require reversal. *Johnston,* 9 S.W.3d at 277. Where refusal does not prevent the adequate presentation of the matter being complained of on appeal, no reversible error has occurred. *Id.* Furthermore, if the requested findings will not result in a different judgment, those findings need not be made. *Id.*

By concluding that Needham "reported a violation of law to appropriate law enforcement authorities," the trial court im-plicitly found that, when Needham told his supervisors of Holt's alleged drinking and driving incident, he made a report to an appropriate law enforcement authority as required by section 554.002(b) of the Whistleblower Act. Because TxDOT's requested finding would not result in a different judgment, the trial court need not have made such a finding. *See id.* Thus, the trial court did not err by not responding to TxDOT's request for additional findings of fact and conclusions of law. We overrule TxDOT's fifth issue.

### Attorney's Fees

■ By its fifth and final issue, TxDOT argues that there is no evidence or insufficient evidence to support the trial court's award of attorney's fees because "[m]erely presenting evidence of a contingent fee arrangement is not sufficient to prove that such fees are reasonable." The party seeking review of a trial court's award of attorney's fees has the burden of presenting the reviewing court with a record showing that the trial court abused its discretion in making the award. *Thomas v. Thomas,* 902 S.W.2d 621, 626 (Tex. App.—Austin 1995, writ denied). TxDOT has not sustained this burden.

■ Evidence of a contingent fee agreement can support an award of attorney's fees under the Whistleblower Act. *Tex. Animal Health Comm'n v. Miller,* 850 S.W.2d 254, 257 (Tex.App.—Eastland 1993, writ denied) (citing *General Life & Accident Ins. Co. v. Higginbotham,* 817 S.W.2d 830, 833 (Tex.App.—Fort Worth 1991, writ denied); *March v. Thiery,* 729 S.W.2d 889, 897 (Tex.App.—Corpus Christi 1987, no writ); *Hochheim Prairie Farm Mutual Ins. Ass'n v. Burnett,* 698 S.W.2d 271, 278 (Tex.App.—Fort Worth 1985, no writ); *Liberty Mut. Ins. Co. v. Allen,* 669 S.W.2d 750, 755 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.);

*Jim Walter Homes, Inc. v. Schuenemann,* 655 S.W.2d 264, 268–69 (Tex.App.—Corpus Christi 1983), *aff'd,* 668 S.W.2d 324 (Tex. 1984); *Texas Farmers Ins. Co. v. Hernandez,* 649 S.W.2d 121, 124 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.)). In addition to adducing evidence regarding a contingency fee arrangement, however, Needham produced further evidence regarding attorney's fees.

Needham's attorney, John Judge, testified that the Whistleblower Act provides for an award of attorney's fees in addition to any actual damages; that he had several years' experience as an attorney specializing in personal injury and civil trial law; that his law firm had thus far spent in excess of $75,000 in Needham's case; that he received $300 per hour for work in the courtroom, $200 per hour for work in the office, and $100 per hour for travel time; and that contingent fee arrangements are the only means by which many individuals can hire a lawyer to litigate with a large institution. Needham's attorney introduced evidence itemizing the time and expenses he incurred in Needham's case. Needham's attorney further discussed, in detail, eight criteria against which attorney's fees need to be measured; according to Judge, "The third criteria is the customary fee. And that is what I testified to yesterday.... Most lawyers who represent Plaintiffs in Whistleblower cases charge a contingent fee. And I've seen some of the percentages go as high as 50 percent. But I think that we're in the ballpark." We conclude that sufficient evidence exists in the record to support the trial court's award of attorney's fees, and that the trial court did therefore not abuse its discretion by including the award of attorney's fees in the final judgment. We overrule TxDOT's fifth and final issue.

### CONCLUSION

Having overruled all of TxDOT's issues, and having concluded that there is both legally and factually sufficient evidence that TxDOT violated the Whistleblower Act, we uphold the jury verdict and affirm the trial court's judgment in all respects.