TEXAS DEPARTMENT OF
TRANSPORTATION,
Petitioner,

v.

Eddie William NEEDHAM,
Respondent.

No. 01–0383.

Supreme Court of Texas.

Argued April 10, 2002.

Delivered May 9, 2002.

Rehearing Denied Sept. 12, 2002.

Julie Caruthers Parsley, Office of Solicitor Gen. of Texas, John Cornyn, Jeffrey S. Boyd, Philip A. Lionberger, Katherine E. Kasten, Cavitt Wendlandt, Danica Lynn Milios, Office of Attys Gen. of Texas, Howard G. Baldwin, First Asst. Atty. Gen., Austin, for petitioner.

John Judge, Judge & Brim, Mark W. Robinett, Jefferson K. Brim, III, Brim Arnette & Robinett, Austin, for respondent.

Justice BAKER delivered the opinion of the Court.

In this Texas Whistleblower Act suit we determine whether the Texas Department of Transportation is an appropriate law enforcement authority to which a public employee may report an alleged driving while intoxicated incident. If TxDOT is not, we must determine whether the public employee had a good faith belief that it was an appropriate law enforcement authority. The trial court rendered judgment based on the jury's verdict for Eddie Needham, TxDOT's former employee who TxDOT allegedly retaliated against because he reported a co-worker's alleged unlawful conduct to TxDOT supervisors. The court of appeals affirmed the trial court's judgment. 76 S.W.3d 15.

We conclude, under the circumstances in this case, that TxDOT was not an appropriate law enforcement authority as the Whistleblower Act defines that term. We also conclude that there is no evidence to support a finding that Needham had a good faith belief that TxDOT was an appropriate law enforcement authority. Accordingly, we reverse the court of appeals' judgment and render judgment that Needham take nothing.

## I. BACKGROUND

By 1996, Eddie Needham had worked for TxDOT's information systems division

for twenty-three years. Needham was a crew chief in TxDOT's Geodetic Control Section. He traveled around the state with other TxDOT employees to perform global positioning surveys. On January 10, 1996, Needham and a crew member were returning from Orange to Austin. The two stopped for the night at College Station. When they arrived at the motel, Needham encountered another TxDOT crew chief, Sam Garnett, and his two crew members. The two crews decided to eat dinner together. One of Garnett's crew members, who drove a separate vehicle to the restaurant, called Needham on the radio for directions. Needham testified at trial that the co-worker's voice was slurred and that he was weaving as he walked into the restaurant. Needham also said that during dinner the co-worker's breath smelled of alcohol. Because he concluded that the co-worker was too intoxicated to drive, Needham instructed another employee to drive the intoxicated employee's car back to the motel after dinner.

Needham testified that he did not immediately report the co-worker's conduct to TxDOT because he believed that the worker's crew chief, Garnett, should do so, and because Needham feared retaliation. Accordingly, Needham waited until February 23 to report the co-worker's conduct to Lewis Keller, a supervisor at the same level as Needham's immediate supervisor, Frank Howard. Needham met with Keller to discuss whether Needham could transfer to Keller's section. During the meeting, Needham also discussed the co-worker's conduct in College Station and sought Keller's advice about what to do. Keller told Needham that TxDOT's Human Resources Manual required Needham to report the incident to Needham's immediate superior. That same day, Needham met with Howard and discussed the possible transfer to Keller's department as well as the drunk driving incident involving the co-worker.

On March 1, Needham talked to Leah Coffman, Howard's supervisor, about various work matters. Needham did not mention the co-worker's conduct in College Station to Coffman, because he had already told Keller and Howard about the incident. In fact, Needham saw Keller on that day to again bring up the drunk driving incident, because Needham thought nothing was being done about the situation. On this occasion, Keller told Needham to talk to Barry Six, a TxDOT employee who dealt with human resources issues.

Needham thus met with Six later that afternoon. When Needham started to tell Six about the drunk driving incident, Six said that he already knew about the incident, management was deciding what to do, and Needham had already done everything he needed to do.

From March 4 through March 6, Needham was out with flu. When he returned to work, he again spoke to Six about the co-worker's conduct. Then, Needham suffered a relapse from the flu and stayed home until March 11.

When Needham returned to work, Coffman escorted him into Six's office to discuss concerns about Needham's travel and work assignment practices. A week later, Howard and Needham met with the division head, Coffman, Six, and another TxDOT supervisor. At that time, Howard gave Needham a progressive disciplinary action document charging Needham with thirteen violations of TxDOT policies and procedures. The violations included a charge that Needham unnecessarily traveled to College Station with no TxDOT business to conduct, secured lodging in College Station rather than return to Austin headquarters, and encouraged other employees to do the same. Based on

these allegations, Howard demoted Needham and placed him on probation for twelve months. Needham testified that he was shocked and devastated about these charges, because he had never received a reprimand during his twenty-three years with TxDOT.

In early April 1996, Needham initiated an administrative appeal of the adverse employment decision. Needham also left work on sick leave and eventually took early retirement on December 31, 1996. After abandoning his administrative appeal, Needham sued TxDOT and alleged, among other things, a Whistleblower Act claim. See TEX. GOV'T CODE §§ 554.001–010.

TxDOT moved for summary judgment on the Whistleblower Act claim. TxDOT asserted that Needham had not reported a violation of law to an appropriate law enforcement authority as the Whistleblower Act requires. However, the trial court denied TxDOT's motion. After a trial, the jury found in Needham's favor. Needham moved for judgment on the verdict, and TxDOT moved for judgment notwithstanding the verdict. The trial court entered judgment on the jury's verdict, and, in response to TxDOT's request, filed findings of fact and conclusions of law. The trial court found and concluded that Needham reported a violation of law to an appropriate law enforcement authority, and that TxDOT took adverse personnel action against Needham in retaliation for the report.

TxDOT appealed and asserted that there was no evidence or insufficient evidence to show that TxDOT violated the Whistleblower Act. The court of appeals concluded that TxDOT's disciplinary action policy gives it the power to discipline an employee "on account of an alleged violation being reported." 76 S.W.3d at 23. Thus, the court of appeals held, TxDOT

qualified as an appropriate law enforcement authority. 76 S.W.3d at 21. The court of appeals also held that there was sufficient evidence for a jury to find that "Needham's report of [the co-worker's] conduct constituted a good faith report of a violation of law to an appropriate law enforcement authority." 76 S.W.3d at 21. Finally, the court of appeals held that the evidence was sufficient to support a finding that TxDOT retaliated against Needham because of his report. 76 S.W.3d at 21. We granted TxDOT's petition for review to determine if the court of appeals correctly applied the Whistleblower Act to conclude that Needham reported a violation of law to a government entity that he in good faith believed was an "appropriate law enforcement authority."

## II. APPLICABLE LAW

### A. THE WHISTLEBLOWER ACT

Texas's Whistleblower Act prohibits a state or local governmental entity from taking adverse personnel action against "a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." TEX. GOV'T CODE § 554.002(a). Before 1995, the Whistleblower Act did not define the term "appropriate law enforcement authority." However, the Legislature's 1995 amendments to the statute added a provision to do so. See Act of May 25, 1995, 74th Leg., R.S. ch. 721, §§ 1–12, 1995 Tex. Gen. Laws 3812 (current version at TEX. GOV'T CODE § 554.002(b)). Thus, section 554.002 of the Whistleblower Act provides:

(b) In this section, a report is made to an appropriate law enforcement authority if the authority is part of a state or local governmental entity or the federal government that the em-

ployee in good faith believes is authorized to:

(1) regulate under or enforce the law alleged to be violated in the report; or

(2) investigate or prosecute a violation of criminal law.

TEX. GOV'T CODE § 554.002(b).

## B. STATUTORY CONSTRUCTION

■ In construing a statute, "our objective is to determine and give effect to the Legislature's intent." *Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000); *see Albertson's, Inc. v. Sinclair,* 984 S.W.2d 958, 960 (Tex.1999). Ordinarily, we first look at the statute's plain and common meaning. *Allen,* 15 S.W.3d at 527; *Fitzgerald v. Advanced Spine Fixation Systems, Inc.,* 996 S.W.2d 864, 865 (Tex.1999). But if a statute defines a term, a court is bound to construe that term by its statutory definition only. TEX. GOV'T CODE § 311.011(b); *Transp. Ins. Co. v. Faircloth,* 898 S.W.2d 269, 274 (Tex. 1995); *Tijerina v. City of Tyler,* 846 S.W.2d 825, 827 (Tex.1992).

■ Further, courts should not give an undefined statutory term a meaning out of harmony or inconsistent with other provisions, although it might be susceptible of such a construction if standing alone. *See Barr v. Bernhard,* 562 S.W.2d 844, 849 (Tex.1978); *Dallas Indep. Sch. Dist. v. Finlan,* 27 S.W.3d 220, 228 (Tex. App.-Dallas 2000, pet. denied). In ascertaining a term's meaning, courts look primarily to how that term is used throughout the statute as a whole. *See Barr,* 562 S.W.2d at 849; *Finlan,* 27 S.W.3d at 228. Statutory terms should be interpreted consistently in every part of an act. *See Finlan,* 27 S.W.3d at 228.

■ Statutory construction is a question of law for the court to decide. *Havlen*

*v. McDougall,* 22 S.W.3d 343, 345 (Tex. 2000); *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989). We review legal questions *de novo. See Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998).

## III. ANALYSIS

■ In this case, we interpret for the first time the term "appropriate law enforcement authority" under the post–1995 Whistleblower Act. TxDOT argues that the statutory definition's plain meaning does not support the court of appeals' conclusion that TxDOT was an appropriate law enforcement authority. TxDOT further asserts that the court of appeals misconstrued and interpreted the statute too broadly by reading a power-to-discipline qualification into the statutory definition. TxDOT contends that it is not an entity charged with regulating under, enforcing, investigating, or prosecuting the state's criminal laws, including those that penalize driving while intoxicated.

On the other hand, Needham contends that the governmental entity's function, and the authority the state grants it, do not solely determine whether it is an "appropriate law enforcement authority." Rather, Needham contends that the perception of the employee who makes the report also determines what constitutes an appropriate law enforcement authority. Here, Needham argues, he reported the co-worker's conduct to his superiors believing in good faith that TxDOT had authority to investigate allegations that an employee drove a TxDOT vehicle while intoxicated in order to regulate its employees by prohibiting their driving TxDOT vehicles while intoxicated. Further, Needham contends that any long-time TxDOT employee would believe that TxDOT had the authority to investigate a report that an employee violated a criminal law not

only for TxDOT's own internal disciplinary process but also to forward the report to another entity to prosecute.

In analyzing whether TxDOT was an appropriate law enforcement authority, the court of appeals recognized that the pre–1995 Whistleblower Act did not define the term. The court of appeals also recognized that the post–1995 version now defines "appropriate law enforcement authority" as a governmental entity that the public employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law. *See* 76 S.W.3d at 23 (citing TEX. GOV'T CODE § 554.002(b)).

But then the court of appeals considered a pre–1995 amendment case that discussed the undefined term "appropriate law enforcement authority." 76 S.W.3d at 21 (citing *City of Dallas v. Moreau*, 697 S.W.2d 472 (Tex.App.-Dallas 1985, no writ)). In *Moreau*, the court of appeals held that an appropriate law enforcement authority must have: (1) the power and duty under the law to decide disputes concerning the lawfulness of the matter being reported; (2) the power and duty to order a halt or a change in the matter reported; (3) the power to legislate or regulate with respect thereto; or (4) the power to arrest, prosecute, or otherwise discipline on account of the alleged violation being reported. *Moreau*, 697 S.W.2d at 474.

Relying on *Moreau's* fourth category, the court of appeals determined that TxDOT was an appropriate law enforcement authority, because TxDOT could "otherwise discipline" employees under its progressive disciplinary action policy. 76 S.W.3d at 24. The court of appeals explained that TxDOT's policy identifies conduct warranting disciplinary action, including illegal activity committed while carrying out official duties and behavioral problems occurring during work hours that relate to alcohol and substance abuse. 76 S.W.3d at 24. Then, the court of appeals noted that the policy requires supervisors to take certain progressive disciplinary action when an employee fails to meet behavior or performance standards. 76 S.W.3d at 24. Because TxDOT's policy gave it the power to discipline an employee based on a reported violation, the court of appeals held that TxDOT qualified as an appropriate law enforcement authority under *Moreau*. 76 S.W.3d at 23.

We disagree with the court of appeals' conclusion, because it relies on a pre–1995 amendment case. The court of appeals' analysis ignores the limiting nature of the Legislature's 1995 amendment to the Whistleblower Act that defines "appropriate law enforcement authority." And, in doing so, the court of appeals' analysis expands the statutory definition to include an employer's general obligation to internally discipline its own employees.

■ When Needham made his drunk driving "report" to TxDOT, the Legislature had already amended the Whistleblower Act to define the term "appropriate law enforcement authority." Thus, the Whistleblower Act provided, as it does today, that an appropriate law enforcement authority is a governmental entity authorized to "regulate under or enforce the law alleged to be violated in the report." TEX. GOV'T CODE § 554.002(b)(1). Alternatively, an appropriate law enforcement authority is a governmental entity authorized to "investigate or prosecute a violation of a criminal law." TEX. GOV'T CODE § 554.002(b)(2). Under the statutory definition, it is clearly not enough that a government entity has *general* authority to regulate, enforce, investigate, or prosecute. Rather, to determine if a governmental entity qualifies as an "appropriate law enforcement authority," we are bound to con-

strue that term as the statute defines it. *See* Tex. Gov't Code § 311.011(b); *Faircloth*, 898 S.W.2d at 274; *Tijerina*, 846 S.W.2d at 827. And the statute defines that term as a governmental entity authorized to regulate under or enforce *"the law alleged to be violated in the report,"* or to investigate or prosecute *"a violation of criminal law."* *See* Tex. Gov't Code § 554.002(b). In other words, the particular law the public employee reported violated is critical to the determination. Thus, here, we must determine whether TxDOT has the authority to regulate under, enforce, investigate, or prosecute a violation of Texas's driving while intoxicated laws. *See* Tex. Gov't Code § 554.002(b).

Here, after analyzing the reported violation of law—driving while intoxicated—under the statutory definition, we conclude that TxDOT was not an appropriate law enforcement authority. TxDOT has no authority to regulate under or enforce the Texas's driving while intoxicated laws. *See* Tex. Gov't Code § 554.002(b)(1). Nor does it have authority to investigate or prosecute these criminal laws. *See* Tex. Gov't Code § 554.002(b)(2). At most, TxDOT has authority to regulate and investigate its employees' conduct only to carry out its internal disciplinary process procedures. But construing the statutory terms to include a public employer's internal disciplinary power would mean all public employers with a disciplinary policy for handling employees' alleged illegal conduct are "appropriate law enforcement authorities" for purposes of reporting any alleged violation. We reject such an interpretation. *See* Tex. Gov't Code § 311.023(5). Accordingly, we hold that, as a matter of law, TxDOT is not an appropriate law enforcement authority under section 554.002(b) for a public employee to report another employee's violation of Texas's driving while intoxicated laws.

However, our conclusion that TxDOT is not a governmental entity authorized to regulate under, enforce, investigate, or prosecute Texas's driving while intoxicated laws does not end our inquiry. Needham may still obtain Whistleblower Act protection if he in good faith believed that TxDOT was an appropriate law enforcement authority as the statute defines the term. *See* Tex. Gov't Code § 554.002(b). Because we have not defined what "good faith" means in this context, this issue is also one of first impression.

Though we have not defined "good faith" under subsection (b), we have defined the term in the context of subsection (a)'s requirement that the reporting employee have a good faith belief that another employee violated the law. *See* Tex. Gov't Code § 554.002(a). Specifically, in *Wichita County v. Hart*, this Court held:

> "Good faith" means that (1) the employee believed that the conduct reported was a violation of law and (2) the employee's belief was reasonable in light of the employee's training and experience.

917 S.W.2d 779, 784 (Tex.1996).

The test's first element—the "honesty in fact" element—ensures that an employee seeking a Whistleblower Act remedy believed he was reporting an actual violation of law. *Hart*, 917 S.W.2d at 784–85. The test's second element ensures that, even if the reporting employee honestly believed that the reported act was a violation of law, the reporting employee only receives Whistleblower Act protection if a reasonably prudent employee in similar circumstances would have believed that the facts as reported were a violation of law. *Hart*, 917 S.W.2d at 785. Thus, the *Hart* test includes both a subjective and objective element.

■ We conclude the same test applies to determine if a public employee in good

faith believed the governmental entity to which he reported a violation of law was an appropriate law enforcement authority. Applying this test upholds the statutory construction principle that, when feasible, we should consistently interpret terms used throughout a statute. *See Barr,* 562 S.W.2d at 849; *Finlan,* 27 S.W.3d at 228. And it allays the same concerns expressed in *Hart* that public employees receive Whistleblower Act protection when they attempt to report illegal activity while, at the same time, public employers retain the right to discipline employees who, in reporting the alleged violation, act unreasonably or only with ill motive. *See Hart,* 917 S.W.2d at 784–85. Thus, in the context of section 554.002(b), "good faith" means:

(1) the employee believed the governmental entity was authorized to (a) regulate under or enforce the law alleged to be violated in the report, or (b) investigate or prosecute a violation of criminal law; and

(2) the employee's belief was reasonable in light of the employee's training and experience.

Accordingly, we must determine if, under the test we adopt today, there is any evidence to support the conclusion that Needham had a good faith belief that he reported the alleged drunk driving incident to the appropriate law enforcement authority.

 Here, the court of appeals applied the *Hart* test to determine that Needham had a good faith belief that he was reporting the violation to an appropriate law enforcement authority. *See* 76 S.W.3d at 21. The court of appeals relied on the same evidence as Needham does here to argue he had a good faith belief under the *Hart* test. First, the court of appeals decided that Needham's persistence in reporting the drunk driving incident to various TxDOT supervisors demonstrates that he subjectively believed TxDOT was the appropriate law enforcement authority. Second, the court of appeals concluded that TxDOT supervisors' telling Needham to whom he should report the co-worker's conduct "reinforces the reasonableness of Needham's belief that the individuals to whom he was reporting were appropriate law enforcement authorities." 76 S.W.3d at 24.

But the court of appeals' analysis, and Needham's contention that the evidence supports his good faith belief under the *Hart* test, are both based on the erroneous assumption that section 554.002(b)'s "appropriate law enforcement authority" definition includes an employer's power to discipline an employee for allegedly violating a law. 76 S.W.3d 24. As we have already held, the statutory definition's limiting language—regulate under, enforce, investigate, and prosecute—does not include an employer's power to internally discipline its own employees for an alleged violation. Here, the only evidence Needham relies on to support that he could have subjectively or objectively believed he was reporting to the appropriate law enforcement authority is TxDOT's disciplinary process, his participation therein, and his belief that TxDOT could forward information to another entity to prosecute a drunk driving allegation. Therefore, we hold that there is no evidence to support a finding that Needham had a good faith belief that TxDOT was an appropriate law enforcement authority under the Whistleblower Act to report a co-worker's drunk driving. *See Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001); *Faircloth,* 898 S.W.2d at 275–76.

## IV. CONCLUSION

We hold that, as a matter of law, TxDOT is not an appropriate law enforcement authority under section 554.002(b) to which a public employee may report an alleged

drunk driving incident. We further hold that there is no evidence to support a finding that Needham had a good faith belief that he reported the alleged drunk driving to an appropriate law enforcement authority. Because these conclusions dispose of this appeal, we need not reach TxDOT's second argument that Needham's causation evidence is legally sufficient. Accordingly, we reverse the court of appeals' judgment and render judgment that Needham take nothing.