Motion for En Banc Rehearing Granted and Opinion of February 14, 2002,
Withdrawn; Reversed and Rendered and Majority and Disse









Motion for
En Banc Rehearing Granted and Opinion of February 14, 2002, Withdrawn; Reversed
and Rendered and Majority and Dissenting Opinions on Rehearing En Banc filed
November 21, 2002.

 

 

 

                                                                                                                                                            

 

 

                                                                                                                                                            

 

                                                                                                                                                            

 

                                                                                                                                                            

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-99-01184-CV

____________

 

CITY OF HOUSTON, Appellant

 

V.

 

GERALD KALLINA, Appellee

 



 

On Appeal from the
61st District Court

Harris
County, Texas

Trial Court Cause
No. 98-15946

 



 

M A J O R
I T Y   O P I N I O N   O N  
R E H E A R I N G   E N   B A N C

The City
of Houston appeals from a judgment awarding $250,000 plus attorney=s fees to its former employee, Gerald
Kallina, under the Texas Whistleblower Act.  On February 14, 2002, a panel of this Court
modified the judgment by adding to it $65,000 in back pay,  and otherwise affirmed. 








On May
9, 2002, the Supreme Court of Texas issued its opinion in Texas Department
of Transportation v. Needham, 82 S.W.3d 314, (Tex. 2002), addressing for
the first time the 1995 amendments defining Aan appropriate law enforcement
authority@ under the Act.  See Act of May 25, 1995, 74th Leg.,
R.S. ch. 721, '' 1-12, 1995 Tex. Gen. Laws 3812
(current version at Tex. Gov=t Code ' 554.002(b)).  We
granted the City=s motion for rehearing en banc to consider the effect of the
latter opinion on the former.  Finding
that this new authority requires a different result, we withdraw the panel=s opinion and issue this en banc
opinion.

Jurisdiction

As an
initial matter, the City argues the trial court lacked subject‑matter
jurisdiction because Kallina did not initiate a
grievance with the City as required.  See
Tex. 
Gov=t Code ' 554.006(a).  Assuming this requirement is jurisdictional,[1]
we hold it does not bar Kallina=s suit.  

On
January 19, 1998, Kallina sent a letter to Mayor Lee
Brown claiming wrongful dismissal and requesting a hearing.  The City's response on February 16, 1998
stated Kallina "had no civil‑service
protection or other internal review procedure," pointing to a city
document in which he acknowledged that he was an executive‑level employee
and therefore exempt from all civil‑service protections and
procedures.  








A
governmental entity may not frustrate an employee=s efforts to initiate a grievance and
then challenge subject-matter jurisdiction on that basis.  See Fort Bend I.S.D. v. Rivera,  No. 
14-01-00721-CV, 2002 WL 1899717 (Tex. App.CHouston [14th Dist.] Aug.  15, 2002, no pet. h.) (holding plaintiff
initiated grievance by requesting meeting with her supervisors, though they
refused to meet with her); University of Tex. Med.
Branch v. Hohman, 6
S.W.3d 767, 775 (Tex.
App.CHouston [1st Dist.]
1999, pet. dism=d  w.o.j.) (holding
notice of claim to employer was sufficient to initiate grievance when
procedures were unclear).  Kallina's
letter to the City stating his claim was sufficient to initiate a grievance in
light of the City=s response that no other procedures applied to him.  The City=s first point is overruled. 

Theft

On the
merits, we address whether Kallina=s supervisor was a representative of
an appropriate law enforcement authority, or whether Kallina
had a good faith belief that she was.  We
review the former de novo, and the latter for legal sufficiency.  See Needham, 82 S.W.3d at 318, 321.

Kallina
worked as division manager in the fixed-asset department of the City of
Houston.  In the course of his duties, he
conducted an inventory audit at a City warehouse where both abandoned and
City-owned assets were stored.  It was
his opinion that 800 items worth at least $400,000 were missing, and he
concluded they must have been stolen. 

According to Kallina,
he initially made an oral report of his findings to his supervisor, Lathenia Harris.  He
believed City policy required missing assets to be reported as stolen if not
located after a thirty-day search, and eventually reported to the Mayor, the
Controller, and perhaps City Council. 
Shortly after Kallina put his final report on
Harris=s
desk, she abruptly informed him he had two days to resign or he would be
fired.  He complied, but later sued. 








The Whistleblower Act prohibits termination of a government
employee Awho in good faith reports a violation
of law by the employing governmental entity or another public employee to an
appropriate law enforcement authority.@ 
Tex. Gov=t Code ' 554.002(a).  The Act defines the latter as a Agovernmental entity . . . that the
employee in good faith believes is authorized to regulate under or enforce the
law alleged to be violated in the report; or investigate or prosecute a
violation of criminal law.@ 
Tex. Gov=t Code ' 554.002(b).  Although the City and Kallina
raised a number of other issues, we address only the City=s assertion that Kallina=s report to Harris did not fall
within the scope of this definition. 

In Needham, an employee of the Texas Department of
Transportation (ATxDOT@) reported a co-worker=s drunk driving to his supervisors at
the department.  He argued TxDOT was included in the statutory definition because the
department could investigate allegations about criminal acts by employees,
discipline them for such acts, and forward information to other agencies for
prosecution.  The supreme court rejected
this interpretation of the statute, holding the focus must be on enforcement of
the particular law reportedly violated:

In other words, the
particular law the public employee reported violated is critical to the
determination . . . TxDOT has no authority to
regulate under or enforce the Texas=s driving while intoxicated laws.  Nor does it have authority to investigate or
prosecute these criminal laws.  At most, TxDOT has authority to regulate and investigate its
employees= conduct only to carry out its internal disciplinary
process procedures.  But construing the
statutory terms to include a public employer=s
internal disciplinary power would mean all public employers with a disciplinary
policy for handling employees= alleged illegal conduct are Aappropriate law enforcement authorities@ for purposes of reporting any alleged violation.  We reject such an interpretation.

 

Needham, 82
S.W.3d at 320 (citations omitted).








Here, the reported violation concerned theft.  There was no evidence Harris or anyone else
in the City=s asset management department had (or
that Kallina believed they had) any authority to
investigate, enforce, or prosecute a violation of the state=s penal laws regarding property
theft.  At most, the evidence showed
Harris had administrative responsibility for assets in the
warehouse, regulated and enforced departmental rules for protecting that
property, and was required to investigate and report any criminal
activity.  But Kallina
conceded he knew Harris could only forward evidence of theft to the police for
actual investigation and prosecution under state law.  Needham holds this is not enough.  Id. 
       Almost any supervisor
has a duty to keep departmental property from disappearing, and report or
discipline subordinate employees if it does. 
Harris had authority
to investigate employees= conduct and carry out internal disciplinary procedures, but no
authority to enforce the theft laws of the state of Texas. 
We hold as a matter of law the City=s asset management department was not
an appropriate law enforcement authority under the Whistleblower Act, and there
was no evidence Kallina had an objectively reasonable
belief otherwise.  See
id. at 320-21 (holding good faith must meet both subjective and objective
tests).

Inventories

In one sentence in his appellate brief, Kallina
argues alternatively that he was terminated for reporting violations of the
City=s inventory procedures.  The Whistleblower Act protects employees who
report violations not only of
statutes, but also of ordinances or Aa rule adopted under a statute or ordinance.@  See
Tex. 
Gov=t Code  ' 554.001(1). Kallina
points to no City ordinances that were violated, but argues his report was
based on violations of two City manualsCthe City=s Fixed Asset Accounting Procedures
and Fixed Asset Accounting PoliciesCwhich he says contain Arules adopted under an ordinance.@

First,
we doubt switching from statutes to rules changes the definition of Alaw enforcement authority.@ 
Although the court in Needham addressed only a penal statute, it
expressly rejected (in the quotation noted above) any interpretation of the Act
that would extend Alaw enforcement@ to supervisors carrying out internal
disciplinary procedures.  This is not newCseveral years before Needham, the
court ruled that the Whistleblower Act does not protect reports of violations
of a department's internal policies.  See Harris County Precinct Four Constable
Dept. v. Grabowski, 922 S.W.2d 954, 956 (Tex. 1996) (holding statute did
not apply to reported violation of constable=s internal policies); see also Ruiz v. City of San Antonio, 966 S.W.2d 128, 130 (Tex. App.CAustin 1998, no pet.) (affirming
dismissal of claims related to violations of police department=s internal policies). 








But
even if Alaw enforcement@ expands when considering Arules adopted under an ordinance,@ nothing reported by Kallina fell in that category.  Of the two manuals upon which he relies, Kallina admits the Procedures manual was adopted under the
authority of the Policies manual, not any statute or ordinance.  But he asserts the Policies manual was Aderived from the Code of Ordinances,@ though he leaves us to guess what
ordinances he has in mind.  

Our
dissenting colleagues helpfully suggest that the Policies manual was adopted
under City ordinances 2-51(6) and 2-52(19). 
But the former merely designates the director of the department of
finance and administration as the chief custodian of all City property;[2]
the latter merely requires the director to manage the city=s property.[3]  Nothing in either gives the director or the
department the power to adopt rules of any kind.  Of course, neither prohibits the department
from adopting internal rules, but such rules would not be Aadopted under a statute or ordinance.@

Our
colleagues also point to language giving the director Aresponsibility for developing and
implementing operating policies and procedures covering the management and
security of all City-owned property.@ 
Although it is difficult to tell from their opinion, this directive
appears not in any City ordinance, but in the Policies manual itself.  Obviously, any rule adopted under this
authority would be adopted under an internal policy not under an
ordinance.      








The
Policies manual here was issued by the City Controller and the Mayor; the
Procedures manual was issued by the director of the finance department.  Neither was adopted by the Houston City
Council.  It is quite clear that these
manuals (and the hundreds of pages they contain) reflect internal policies
rather than rules promulgated pursuant to an ordinance.  That is not enough.  See Needham, 82 S.W.3d at 320; Grabowski, 922
S.W.2d at 956.

Conclusion

Without
question, Kallina had a duty to report possible theft
or violations of department procedures to his supervisor.  That was his job.  The legislature might have drafted the
Whistleblower Act to provide immunity for all reports governmental employees make
to their supervisors, but it did not. 
Instead, it protected only reports made to appropriate law enforcement
authorities. 

Accordingly,
the judgment of the trial court is reversed, and judgment is rendered that
Gerald Kallina take nothing.          

 

/s/        Scott Brister

Chief Justice

 

Motion for En Banc Rehearing Granted and Opinion of
February 14, 2002, Withdrawn; Judgment rendered and Majority and Dissenting
Opinions on Rehearing En Banc filed November 21, 2002.

 

En Banc Panel consists of Chief Justice Brister, and Justices Yates, Anderson, Hudson, Fowler,
Edelman, Frost, Seymore, Guzman, and Senior Justices
Lee[4]
and Wittig[5].
(Senior Justice Lee filed a dissenting opinion in which Senior Justice Wittig joined).

 

Publish C Tex.
R. App. P. 47.3(b).








Motion for En Banc Rehearing Granted and Opinion of
February 14, 2002, Withdrawn; Reversed and Rendered and Majority and Dissenting
Opinions on Rehearing En Banc filed November 21, 2002.




 
 
 
 
 
 
 




                                                                                                                                                            

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-99-01184-CV

____________

 

CITY OF HOUSTON, Appellant

 

V.

 

GERALD KALLINA, Appellee

 



 

On
Appeal from the 61st District Court

Harris
County, Texas

Trial
Court Cause No. 98-15946

 



 

D I S S E N T I N G  O P I N I O N 
ON  R E H E A R I N G  EN 
BANC 

The en banc majority
reverses and renders
judgment against Kallina based on two
conclusions:  (1) the City=s fixed-asset policies were not
adopted under any statute or ordinance; and (2) there was no evidence Kallina believed in good faith that Lathenia
Harris was an appropriate law enforcement authority to
which he could report theft.  However,
there was legally sufficient evidence that the fixed-asset policies were
adopted under city ordinances, and there was legally sufficient evidence Kallina believed in good faith that Harris
was an appropriate law enforcement authority.  Therefore, I respectfully dissent.








The Texas Whistleblower Act does not apply only to reports of
criminal violations; rather it also applies to reports of violations of rules
adopted under a statute or ordinance.  See
Tex. Gov=t Code ' 554.001(1)(C); Jones
v. City of Stephenville, 896 S.W.2d 574, 575-76 (Tex. App.CEastland 1995, no writ) (report of
violation of policy contained in Employee Handbook was a report of violation of
law because handbook was a rule adopted under a statute or ordinance).  Kallina asserts two
different theories of recovery under the Texas Whistleblower Act.  Under one theory, Kallina
reported the violation of fixed-asset policies adopted under a statute or
ordinance to Harris, who he believed in good faith was authorized to regulate
under or enforce these policies.  

Although the majority relies on the recent Needham
case, Needham does not apply to Kallina=s theory of recovery under the
fixed-asset policies.  See Texas
Dept. of Transp. v. Needham, 82 S.W.3d 314, 315B22 (Tex. 2002).  Needham is not on point because it
involved alleged violations of the criminal lawCnot violations of policies adopted
under a statute or ordinanceCand because, unlike in Needham, there was sufficient
evidence at trial that Harris was an appropriate law enforcement authority for
these policies.  See id.  In this case, Harris was authorized to
regulate under and enforce the fixed-assets policies.  Kallina does not
rely on internal disciplinary procedures as the plaintiff did in Needham.  See id.
at 321B22.  Furthermore, the majority reads Needham too
broadly.  In discussing the determination
of whether the plaintiff has reported a violation of law in good faith to an
appropriate law enforcement authority, the Needham court stressed that Athe particular law the public
employee reported violated is critical to the determination.@ Id. at
320.     

The jury found in Kallina=s favor, and, on appeal, Kallina has asserted his theory based on the fixed-asset
policies.  The City of Houston Fixed
Asset Accounting Policies were admitted in evidence at trial.  These policies indicate that they were
adopted under City of Houston ordinances (emphasis added):








The responsibilities of the Director of Finance
and Administration for fixed assets are described in the Code of Ordinances.  Chapter 2, Sections 2-51(6), and 2-52(19),
and relate to the physical custody, security and inventory control thereof on
behalf of the Citizens.  The Code of
Ordinances states that:

A. . . the Director of Finance and Administration, subject
to the direction and supervision of the Mayor, shall . . . . Be the chief
custodian of all city property, both real and personal, except property that is
assigned by law or directive of the mayor to the custody of another city
officer or department.  Following the
conclusion of each city fiscal year, the director shall provide the mayor with
a full annual inventory of all property within his custody.@

AThe Department of Finance and Administration shall be
charged with the following duties . . . (19) Manage the city=s real and personal property within the custody of the
director, including surplus city personal property, and maintain a perpetual
inventory thereof.@

The Director of Finance and Administration shall have responsibility
for developing and implementing operating policies and procedures covering the
management and security of all City-owned property. . . . In carrying out
these duties, the Director shall be responsible for:

. . .

h)         Establishing a Fixed Asset Management program within Finance
and Administration to coordinate the development and dissemination of fixed
asset policies and procedures . . . . 








In conducting a legal‑sufficiency analysis, we review
the evidence in a light that tends to support the disputed findings and
disregard all evidence and inferences to the contrary.  Lee Lewis Const., Inc. v. Harrison, 70
S.W.3d 778, 782 (Tex. 2001).  If more
than a scintilla of evidence exists, it is legally sufficient.  Id. 
More than a scintilla of evidence exists if the evidence furnishes some
reasonable basis for differing conclusions by reasonable minds about a vital
fact=s existence.  Id. at 782B83. 
After citing two ordinances regarding the responsibility of the
Department of Finance and Administration for managing city property and
maintaining a perpetual inventory thereof, the policies state that the Director
of Finance and Administration has responsibility for developing and
implementing operating policies and procedures for the management and security
of all city property.  While the policies
do not explicitly recite that they are adopted under these ordinances; in these
circumstances, the reasonable meaning of the above language is that the polices
were adopted under these ordinances. 
Based on the above language from the fixed-asset policies, there was
legally sufficient evidence that these policies were adopted under sections
2-51(6) and 2-52(19) of the Houston Code of Ordinances.  See City
of Houston, Texas, Code of Ordinances '' 2-51(6), 2-52(19); City
of Stephenville, 896 S.W.2d at 576. 


The majority states that these policies do not indicate they
were adopted under the authority of any ordinance and that the ordinances do
not delegate any rule-making authority to Director of Finance and
Administration.  While there is no Texas
Supreme Court authority on point, the majority=s holding is too narrow, and it
conflicts with a decision of the Eastland Court of Appeals.  See City
of Stephenville, 896 S.W.2d at 576 (report of violation of policy
contained in Employee Handbook was a report of violation of law because
handbook was a rule adopted under a statute or ordinance).  

The Grabowski and Ruiz cases cited by the
majority are not on point.  See  Harris Cty.
Precinct Four Constable Dept. v. Grabowski, 922 S.W.2d 954, 956 (Tex.
1996); Ruiz v. City of San Antonio, 966 S.W.2d 128, 130 (Tex. App.CAustin 1998, no pet.).  Unlike Kallina, the
plaintiff in Grabowski did not allege that the departmental polices in
question were adopted under a statute or ordinance.  See Grabowski, 922 S.W.2d at 955B56. 
The Ruiz court held that summary judgment was improper because
Ruiz had alleged violations of the criminal law, without addressing whether any
departmental policies were adopted under a statute or ordinance.  See Ruiz, 966 S.W.2d at 130B31. 
The Ruiz court correctly stated that the Texas Whistleblower Act
does not protect violations of internal policy not adopted under a statute or
ordinance.  See Ruiz, 966 S.W.2d
at 130 (citing Tex. Gov=t Code ' 554.001(1) and  Grabowski).  Conversely, the Texas Whistleblower Act does
protect violations of policies  adopted
under a statute or ordinance.  See
Tex. Gov=t Code ' 554.001(1)(C); City
of Stephenville, 896 S.W.2d at 576.








The Texas Whistleblower Act does not require that the
policies explicitly state that they are adopted under an ordinance, and it does
not require that the ordinance explicitly give rule-making authority to the
entity that made the rule.  See Tex. Gov=t Code ' 554.001(1)(C); City
of Stephenville,
896 S.W.2d at 575-76.  The policies
recite that Houston ordinances charge the Director of Finance and
Administration with responsibility for managing city property and maintaining a
perpetual inventory thereof.  They then
state that the Director is responsible for implementing policies for the
management and security of all city property, and they outline policies for the
management and security of all city property. 
The fixed-asset policies were adopted under City of Houston ordinances,
and, therefore, they are  a law whose
violation may be reported under the Texas Whistleblower Act.  See Tex.
Gov=t Code ' 554.001(1); City of Stephenville,
896 S.W.2d at 575-76.  

Policy #1 requires
city employees to exercise the utmost care and diligence in protecting the city
property placed under their control:

City employees, regardless of classification or
function, shall exercise the utmost care and diligence in the use, maintenance
and protection of all public assets placed under their control or custody. 

Policy #14 requires that departments
maintain current and accurate fixed-asset- inventory records:

The
departments shall maintain accountability for their equipment and current and
accurate fixed asset physical inventory records by conducting physical
inventories under the coordination of the Finance & Administration
Department (F&A). 








The evidence strongly supports the
jury=s finding that Kallina
believed in good faith that Harris was an appropriate law enforcement authority
as to the fixed-asset policies.  As the
majority correctly states, the evidence showed that Harris had administrative
responsibility for the assets in the Broad Street Warehouse and that she
regulated and enforced departmental rules for protecting those assets.  Harris testified that she enforces the rules
regarding inventory and that if somebody has a problem with these rules he can
come to her about it.  Kallina and Harris both testified
that Harris had the authority to enforce these policies regarding the inventory
at the Broad Street Warehouse.  Considering the
evidence in a light that tends to support the jury=s findings and disregarding all
evidence and inferences to the contrary, there was legally sufficient evidence
to support the jury=s finding that Kallina
believed in good faith Harris was authorized to regulate under or enforce the
fixed-asset policies and that this belief was reasonable in light of Kallina=s
training and experience.  See Needham,
82 S.W.3d at 320B21; Lee Lewis Const., Inc., 70 S.W.3d at 782B87. 


There was also legally sufficient
evidence that Kallina was terminated for reporting in
good faith violations of Policies #1 and #14 to Harris.  Kallina testified
he determined that there were approximately 800 assets listed on the inventory
records that were not in the Broad Street Warehouse and that these assets were
worth in excess of $400,000.  Kallina testified that Jerry Ferguson, the manager of the
Broad Street Warehouse, was not responsive and that he was stalling in response
to Kallina=s requests that he take steps to
maintain current and accurate inventory records at the Broad Street
Warehouse.  There was evidence that, both
orally and by his memorandum of December 8, 1997, Kallina
informed Harris of this discrepancy and failure to maintain accurate inventory
records. There was evidence that Kallina
reported Ferguson=s
failure to exercise the utmost care and diligence in the use and protection of
all public assets placed under his control or custody.  There was also evidence that Kallina reported the failure to maintain current and
accurate physical inventory records by conducting physical inventories under
the coordination of the Finance & Administration Department.  Considering the evidence in a light that tends to support the
jury=s findings and disregarding all
evidence and inferences to the contrary, there was legally sufficient evidence
to support a jury finding that Kallina was terminated
for reporting in good faith violations of Policies #1 and #14 to Harris.  See Lee Lewis Const., Inc., 70 S.W.3d
at 782B87.  Therefore, the majority errs in sustaining
the City=s
second issue on the ground that there was legally insufficient evidence to
support the jury=s
finding of liability under Kallina=s fixed-asset-policies
theory.  








Alternatively,
the majority holds there was no evidence Kallina believed in
good faith that Harris was an appropriate law enforcement authority to
which he could report theft.  For this
holding, the majority relies on the Needham case.  See Needham, 82 S.W.3d at 315B22.  Even as to the theory that Kallina was reporting a violation of the criminal law
against theft, the Needham case is not directly on point.  In Needham, the only evidence of the
plaintiff=s
good faith belief that the report was made to an appropriate law enforcement
authority was his employer=s
disciplinary process, his participation therein, and his belief that his
employer could forward information to another entity to prosecute his co-worker
for drunk driving. See Needham, 82 S.W.3d at 321B22.  In this case, the alleged law enforcement
authority herself testified that her job was to enforce the rules and to make
sure there was no criminal activity at the Broad Street Warehouse.  Therefore, even after Needham, there was legally sufficient
evidence to support the jury=s finding that Kallina reported in
good faith to an appropriate law enforcement authority under both of his
theories of recovery.  Under both of
these theories, this court errs in determining that there was legally
insufficient evidence.  For all of the
above reasons, I respectfully dissent.  

 

/s/        Norman
R. Lee

Senior Justice

 

Motion for En Banc Rehearing Granted and Opinion of
February 14, 2002, Withdrawn; Judgment rendered and Majority and Dissenting
Opinions on Rehearing En Banc filed November 21, 2002. 

 

En Banc Panel consists of Chief Justice Brister and Justices Yates, Anderson, Hudson, Fowler,
Edelman, Frost, Seymore, Guzman, and Senior Justices
Lee[1] and Wittig.[2] (Senior Justice Lee filed a
dissenting opinion in which Senior Justice Wittig
joined).

 

Publish CTex. R. App. P.
47.3(b).

 











[1]  See Fort
Bend I.S.D. v. Rivera, No. 
14-01-00721-CV, 2002 WL 1899717 (Tex. App.CHouston
[14th Dist.] Aug.15, 2002, no pet. h.) (Brister,
C.J., concurring) (arguing failure to initiate grievance before filing suit is
not jurisdictional and may be cured by abatement).  Because all members of the Court agree the
exhaustion requirement in this case has been satisfied, we need not decide
whether the question is jurisdictional here. 
See Texas Dept. of Public Safety v. Kreipe,
29 S.W.3d 334, 337  (Tex.  App.CHouston
[14th Dist.] 2000, pet. denied) (assuming without deciding that notice
requirement was jurisdictional, as plaintiff could correct defect).  For the same reason, it does not merit en
banc consideration.  See Tex. R .App. P. 41.2(c) (stating en
banc consideration should only be granted to maintain uniformity of court=s decisions or in extraordinary circumstances).





[2]  A. . . the director of finance and administration,
subject to the direction and supervision of the mayor, shall:

.      .      .

(6) Be the chief custodian of all city property, both
real and personal, except property that is assigned by law or by directive of
the mayor to the custody of another city officer or department.  Following the conclusion of each city fiscal
year, the director shall provide the mayor with a full annual inventory of all
property within his custody.@  

Houston, Tex., Code of
Ordinances ch. 2, art.  III,
div. 1, ' 2-51.   





[3]  AThe department of finance and administration and such
employees of the department as are assigned to it shall be charged with the
following duties:

.      .      .

(19) Manage the city=s real
and personal property within the custody of the director, including surplus
city personal property, and maintain a perpetual inventory thereof; provided,
however, that any surplus personal property that has a fair market value of not
more than $15.00 may, at the discretion of the city purchasing agent, be
destroyed or disposed of in any lawful manner.@  

Houston, Tex., Code of Ordinances ch. 2, art.  III,
div. 1, ' 2-52. 

 





[4]  Senior Justice
Norman R. Lee sitting by assignment.





[5]  Senior Justice
Don Wittig sitting by assignment.





[1]  Senior Justice
Norman R. Lee sitting by assignment.





[2]  Senior Justice
Don Wittig sitting by assignment.