Reversed and Rendered; Opinion of March 22, 2005 Withdrawn; and
Substitute Opinion filed July 28, 2005









Reversed
and Rendered; Opinion of March 22, 2005 Withdrawn; and Substitute Opinion filed
July 28, 2005.

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00637-CV

____________

 

THE CITY OF HOUSTON, Appellant

 

V.

 

ANJA COTTON, Appellee

_______________________________________________________

 

On Appeal from the 333rd District Court

Harris County, Texas

Trial Court Cause No. 98-60310

_______________________________________________________

 

S U B S T I T U T E   O P I N I O
N

We
withdraw our opinion of March 22, 2005, and issue this substitute opinion. 








Anja Cotton sued appellant, the City of Houston,
under the Texas Whistleblower Act.[1]
She alleged the City terminated her employment as a sanitarian in retaliation
for her having reported violations of law by two of her superiors.  Following a bench trial, the court awarded
Cotton $32,000.00 for past lost wages; $162,108.42 for attorney=s fees;
$9,570.97 for costs; $10,607.40 for prejudgment interest on the lost wages; and
post-judgment interest.[2]
In four issues, the City challenges the trial court=s
conclusions of law and the legal and factual sufficiency of the evidence to
support the trial court=s
findings of fact, and also argues the trial court abused its discretion by
awarding Cotton damages and attorney=s fees
when she failed to comply with the discovery rules.  Concluding there is no evidence to support
the trial court=s finding
Cotton made reports of violations of law in good faith, we reverse and render
judgment in favor of the City.

I. 
Factual and Procedural Background

Beginning in December 1992, Cotton was a
sanitarian with the City=s
Department of Health and Human Services (ADepartment@).  Her duties included regularly inspecting
restaurants and other food establishments in Houston to ensure they were
operating in compliance with the City=s health
code and issuing citations for code violations she observed. In 1996, Cotton
and a few co-workers were worried that municipal citations they had issued were
being voided or destroyed by their immediate supervisor, Juan Munguia, and
Chirag Bhatt, Manager of the Department=s Bureau
of Consumer Health.  They believed Bhatt
was doing so as favors or for monetary gain. 
During this period, the Department did not have an accounting or log
system for citations, and it was not uncommon for supervisors, as a matter of
discretion, to void the citations issued by subordinates.








In October 1996, Bernard Silverman, also a
sanitarian, filed a complaint with the 
City=s Office of Public Integrity
Review Group, predecessor of the present Office of the Inspector General (AOIG@).[3]  Silverman complained Bhatt, with the
accommodation of other supervisors, was Afixing@ tickets
for specific establishments.

On February 10, 1997, Cotton provided OIG a sworn
affidavit, invoking the protections of the Texas Whistleblower Act (Athe Act@), and
stating she wished Ato file a
formal written complaint asserting that members of the management team of the
Health Department knowingly and willingly destroy Municipal Court Citations.@  She also stated citations were Acontinuously
[sic] being pulled, voided and thrown away.@  She alleged that A[s]ince
Bhatt became Division Manager of Consumer Health, enforcement of food and
health [sic] has become non existing [sic] in certain food establishment [sic].@  Finally, Cotton stated some establishment
owners would tell inspectors that Bhatt and another supervisor would pull
tickets if any were issued to them, with the result that some inspectors
stopped issuing citations or took citations directly to municipal court because
they feared the citations would otherwise be pulled.

On July 2, 1998, OIG sent Department Director Dr.
Mary Kendrick a copy of the Summary and Conclusions to the OIG Investigation
Report.  The Summary and Conclusions
indicate A[s]tatements obtained by Officer
Calix [the investigating officer] revealed a routine pattern in which
Sanitarians were impeded from enforcement of the Health Code by either Mr.
Bhatt, or the Chief Sanitarians under him, by either voiding the citations or
going to the business to prevent them from being issued.@  The investigation Arevealed
no evidence of supervisory personnel receiving any monetary benefit for dismissing
citations.@ 
The case was presented to the Harris County District Attorney=s office
for review, but the office found no evidence of criminal conduct, and the case
was concluded without charges being filed. 
Before the investigation concluded, Earl Travis, Department Deputy
Director, had instituted a policy requiring that he approve the cancellation of
all Consumer Health citations until further notice.








On August 9, 1998, a Sunday, Cotton inspected a
Fiesta Mart grocery store.  She submitted
an inspection report indicating she had conducted the inspection from 12:44
p.m. until 8:45 p.m. and had inspected eight departments, including a pizza
bar.[4]  Salah Assem, the Fiesta store manager, signed
each of the eight pages of the report.

Cotton submitted her overtime request to
Munguia.  Munguia then presented the
overtime request to Bhatt for approval. 
At that time, Bhatt told Munguia to do a targeted Quality Assurance (AQA@) audit
on Cotton=s August 9 Fiesta inspection.[5]

Munguia conducted the QA audit on August 17, 1998,
and took Assem=s statement.  Assem stated they walked through all
departments, the entire inspection took about one to one and a half-hours, and
it concluded about 1:45 p.m.[6]  According to Assem, Cotton then called her
husband to pick her up.  Assem stated
that on her way out, Cotton said, A>by-the-way,
if anyone asks, I was here until 8:45.=@  That same day, August 17, 1998, Bhatt
recommended Cotton for indefinite suspension.[7]


On September 18, 1998, Kendrick notified Cotton in
writing of the recommendation that her employment be terminated.  The August 9, 1998 Fiesta inspection formed
the basis of an allegation of falsification of a legal document, and another
inspection, the basis of an allegation of violation of standards of conduct.








By letter dated November 5, 1998, Mayor Lee Brown
notified Cotton he was indefinitely suspending her for falsifying food
inspection reports, fraudulently receiving overtime, and abusing her official
authority, based on her conduct during the two inspections.

Cotton appealed to the Civil Service
Commission.  On December 11, 1998, the
Commission sustained Mayor Brown=s action.

Cotton then sued the City, alleging the City had
terminated her employment because she reported Bhatt=s and
Munguia=s alleged
violations of the law to the Houston Police Department=s Public
Integrity Unit.  Specifically, she
alleged:

During 1996, [Cotton] learned many of the
citations she and other Sanitarians issued were revoked by her immediate
supervisors, Juan Munguia and Chirag Bhatt, without her knowledge or
consent.  The revocation of the citations
was in violation of the City of Houston policy regarding Health Code violations
and the laws of the State of Texas.  In
essence, it was believed that Bhatt and Mungia [sic] were destroying government
property, falsifying government records, and taking bribes from commercial
establishments.

 

Following an eight-day trial to the bench in May
2002 and a hearing on attorney=s fees in
February 2003, the trial court rendered final judgment in favor of Cotton on
February 28, 2003.[8]  The City filed a motion for new trial, which
was denied by operation of law.  On June
11, 2003, the trial court filed the following findings of fact and conclusions
of law:

Findings
of Fact:

1.         Plaintiff was an employee of the City of Houston Health and Human
Services Department.

2.         Plaintiff made reports of violations of law to the City of
Houston Office of Inspector General.








3.         Plaintiff made her reports of violations of law in good
faith and to an appropriate law enforcement agency.

4.         Plaintiff falsified her time records on August 9, 1998, to
show that she was at the Fiesta store for over 8 hours.  Based on her falsified report, Plaintiff
requested and was paid overtime for hours she did not work.

5.         The investigation of Plaintiff=s time records that lead
[sic] to Plaintiff=s termination would not
have occurred when it did, but for her reports of violations of law to the
Office of Inspector General.  Hence, but
for her reports of violations of law, Plaintiff would not have been terminated
when she was.

6.         Plaintiff suffered past lost wages in an amount of
$32,000.00.

7.         Plaintiff is entitled to recover pre-judgment interest on
lost wages at 10% per annum in the amount of $10,607.40.

8.         Reasonable and necessary trial attorney=s fees are
$162,108.42.  Reasonable and necessary
attorney=s fees in the event this
case is appealed to the Court of Appeals are $15,000.00.  Reasonable and necessary attorney=s fees in the event this
matter is appealed further to the Texas Supreme Court are $7,500.00.

9.         Plaintiff has incurred costs of court in the amount of $9,570.97.

 

Conclusions
of Law:

1.         The City of Houston has violated the Texas Whistleblower
Act, Texas Gov. Code, []' 554.002(a).

2.         Pursuant to the Texas Whistleblower Act, Texas Gov. Code, ''554.003(a) and (b),
Plaintiff is entitled to Judgment against the City of Houston as follows:

a.         $32,000.00 for past lost wages.

b.         $10,607.40 for prejudgment interest.

c.         Trial attorney=s fees of $162,108.42.

d.         Conditional appellate attorney=s fees of:

i.          $15,000.00 in the event of an appeal to the Court of
Appeals.

ii.         $7,500.00 in the event of a further appeal to the Texas
Supreme Court.








e.         $9,570.97 as costs of court.

f.          Post judgment interest
at 10% per annum on the entire sum (a-e, above), from the date of judgment
until paid.

The City now appeals, challenging the trial court=s
conclusions of law and the factual and legal sufficiency of the evidence to
support selected findings of fact.[9]  The City also challenges the trial court=s
admission of evidence on, and the award of, damages and attorney=s fees.

II.  Analysis

A.        Standard of Review

We review conclusions of law de novo to determine
whether they are correct.  Martin‑Simon
v. Womack, 68 S.W.3d 793, 796 (Tex. App.CHouston
[14th Dist.] 2001, pet. denied).  We will
uphold conclusions of law if the judgment can be sustained on any legal theory
supported by the evidence.  Id.  Thus, incorrect conclusions of law do not
require reversal if the controlling findings of fact support the judgment under
a correct legal theory.  Id.








In reviewing a trial court=s
findings of fact for legal and factual sufficiency of the evidence, we apply
the same standards we apply in reviewing the evidence supporting a jury=s
answer.  Catalina v. Blasdel, 881
S.W.2d 295, 297 (Tex. 1994).  When the
appellate record contains a reporter=s record
as it does in this case, findings of fact are not conclusive on appeal if the
contrary is established as a matter of law or if there is no evidence to
support the findings.  Material P=ships,
Inc. v. Ventura, 102 S.W.3d 252, 257 (Tex. App.CHouston
[14th Dist.] 2003, pet. denied).  When,
as in the present case, both legal and factual sufficiency challenges are
raised on appeal, the appellate court must first examine the legal sufficiency
of the evidence.  Trimble v. Tex. Dep=t of
Protective & Regulatory Serv., 981 S.W.2d 211, 217 (Tex. App.CHouston
[14th Dist.] 1998, no pet.).

In conducting a legal‑sufficiency review, we
view the evidence in a light that tends to support the finding of the disputed
facts and disregard all evidence and inferences to the contrary.  Lee Lewis Constr., Inc. v. Harrison,
70 S.W.3d 778, 782 (Tex. 2001).  We may
sustain a legal-sufficiency, or no-evidence, point if the record reveals one of
the following:  (1) the complete absence
of a vital fact; (2) the court is barred by rules of law or of evidence from
giving weight to the only evidence offered to prove a vital fact; (3) the
evidence offered to prove a vital fact is no more than a scintilla; or (4) the
evidence established conclusively the opposite of the vital fact.  See Uniroyal Goodrich Tire Co. v.
Martinez, 977 S.W.2d 328, 334 (Tex. 1998). 
If more than a scintilla of evidence exists, it is legally
sufficient.  Lee Lewis Constr., 70
S.W.3d at 782.  More than a scintilla of
evidence exists if the evidence furnishes some reasonable basis for differing
conclusions by reasonable minds about a vital fact=s
existence.  Id. at 782B83.

B.        Is there legally sufficient evidence Cotton had a good
faith belief the reported conduct was a violation of law?








In its third issue, the City asserts the evidence
is legally insufficient to support the trial court=s finding
that Cotton in good faith believed the conduct she reported to OIG was a
violation of law.  Good faith as used in
the Act means (1) the employee believed the conduct she reported was a
violation of law and (2) the employee=s belief
was reasonable in light of her training and experience.  Wichita County v. Hart, 917 S.W.2d 779,
784 (Tex. 1996).  The first, or
subjective, prong of the test embodies the concept of Ahonesty
in fact@ and
ensures an employee seeking a remedy under the Act must have believed she was
reporting an actual violation of the law. 
See Tex. Dep=t of
Transp. v. Needham, 82 S.W.3d 314, 320 (Tex. 2002); Hart, 917
S.W.2d at 784B85.  The second, or objective, prong ensures that,
even if the reporting employee honestly believed the reported conduct was a
violation of law, she receives protection under the Act Aonly if a
reasonably prudent employee in similar circumstances would have believed that the
facts as reported were a violation of law.@  Hart, 917 S.W.2d at 785 (emphasis
added); see Needham, 82 S.W.3d at 320.  The objective reasonableness of an employee=s belief
must be viewed in light of her training and experience.  See Hart, 917 S.W.2d at 785.

The City asserts there is no evidence to support
the trial court=s implied
finding that  a reasonably prudent
employee in similar circumstances would have believed the facts Cotton reported
were a violation of law.[10]  To analyze this issue, we must examine the
facts Cotton reported.  The body of Cotton=s report
to the OIG reads, in pertinent part, as follows:

My name is Anja Cotton. . . . I have attained approximately sixteen
(16) years of formal education and am competent to make this sworn
affidavit.  I have personal knowledge
concerning the facts stated herein.  The
facts stated herein are true and correct, except those stated on information
and belief, which are true and correct to the best of my information and
belief.

My name is Anja Cotton and I am currently employed at the City of
Houston Health Dept. as a Sanitarian I. 
I have worked for the City of Houston for approximately six (6)
years.  Mr. Munguia is my immediate
Supervisor and my working relationship with him has been excellent.

First, I want to invoke the protections offered by the Whistle blower
[sic] Act as defined in V.T.C.A., Government Code Section 554.002 (1994) and as
established by case law . . . .

. . .








I wish to file a formal written complaint asserting that members of the
management team of the Health Department knowingly and willingly destroy
Municipal Court Citations.  Since Mr.
Chirag Bhatt became Division Manager of Consumer Health, enforcement of food
and health [sic] has become non existing [sic] in certain food establishment
[sic].  Citations are continuously [sic]
being pulled, voided and thrown away.  I
personally wrote six (6) tickets to Stephen Food Store, located at 3902
Bellfort, ticket #04660433, 04660442, 04192605, 04660451, 4660415 [sic], and
04660424 in 1996.  These citations
totaled eleven (11) violations.  There is
an unwritten policy within the Bureau of Consumer Health that is if [sic] an
establishment refuses to close, then it is customary to issue tickets for as
many violations that can be written, after receiving permission from your
supervisor.  I received Mr. Don Hsu [sic]
permission to write the citations.  A few
weeks later I was looking through the voided ticket file which is kept at Ms.
Renee Beckams= [sic] desk.  I found all six (6) citations written to the
above food store voided out.

After making copies of the citations I confronted my supervisor, Mr.
Don Hsu about what I had found and he told me that Mr. Bhatt said he voided the
citations because I had written to [sic] many. 
I asked Mr. Hsu, if that was the case, why did he pull all of them?  Mr. Hsu could not answer my question.

Secondly, some owners of establishments will tell inspectors that Mr.
Don Hsu or Mr. Bhatt will pull tickets if any are issued to them.  This has made some inspectors stop issuing
citations or they take the citation directly to Municipal Courts, fearing the
ticket will be pulled.  Mr. Bob Tannis,
Assistant Director has been made aware of the situation but insist [sic] that
nothing is going on. 

In this report, Cotton alleges specific facts
relating to six citations she wrote involving Stephen Food Store.  The report makes it clear these citations
were voided and placed in the voided citation file.

In addition, during the course of the
investigation, Cotton told Calix that the owner of Shivas Restaurant had told
her Bhatt was going to Apull@ tickets
she would write.  Cotton provided Calix
with copies of voided citations involving Shivas Restaurant.








Cotton does not assert similarly specific facts
showing that Bhatt or any other manager at the City of Houston Health
Department was destroying, removing, or defacing any citations or, in other
words, violating any law.  Instead, to Aprove@ a
reasonably prudent employee in her circumstances would believe Bhatt was
destroying citations, Cotton relies on second-level hearsay (Bhatt told
operators of some establishments, who told Cotton, he would Apull@ or tear
up tickets) coupled with the alleged disappearance of citations she wrote to
the same establishments.  Other than
having her citations disappear or never enter the court system, however, Cotton
offered no evidence to establish why a reasonably prudent employee in her circumstances would have believed the establishment
operators when they told her of their beliefs that Bhatt was physically
destroying citations.  She points to
Brown and Silverman=s similar beliefs, but the fact the three sanitarians may
have shared the same belief begs the question of whether a reasonably prudent
employee would have been justified in forming that belief.

Through Officer Miguel Calix=s
testimony in the trial court and in her arguments on appeal, Cotton points to
section 37.10 of the Texas Penal Code.  See
Tex. Pen. Code Ann. ' 37.10
(a) B (b)
(Vernon 2004B05).  Under this statute, a person commits a crime
if he does any of the following:

$                  
Aknowingly makes a false
entry in, or false alteration of, a governmental record;@

$                  
Amakes, presents, or uses
any record, document, or thing with knowledge of its falsity and with intent
that it be taken as a genuine governmental record;@

$                  
Aintentionally destroys,
conceals, removes, or otherwise impairs the verity, legibility, or availability
of a governmental record;@ or

$                  
Amakes, presents, or uses a
governmental record with knowledge of its falsity.@

Tex. Pen Code Ann. 37.10(a) (1), (2), (3), (5).








Both Cotton=s report
to the OIG and her trial testimony reflect she characterized managers= actions
at the Health Department as Apulling,@ Avoiding,@ Athrowing
away,@ or Adestroying,@
citations that had been written.  Regardless
of the generic terms Cotton may have used to characterize the conduct of the
management team, the facts Cotton reported are that (1) she wrote six citations
containing eleven alleged violations regarding Stephen Food Store, (2) Bhatt
later voided all of the citations, which were placed in the file for voided
citations, (3) owners of establishments, including Shivas Restaurant, told her
Bhatt had said he would Apull@ tickets,
and (4) the Shivas citations she wrote were voided.

Granted, Cotton testified she believed going
behind her back and tearing up or voiding tickets was a violation of the
law.  Nevertheless, Cotton presented no
evidence to show why a reasonably prudent employee in her circumstances, with
her training and over four years of experience as a sanitarian, would have
believed that, by voiding and not proceeding with health department citations
such as those she issued against Stephen Food Store, managers destroyed,
concealed, or defaced government documents or otherwise violated section 37.10
of the Texas Penal Code.  She also
presented no evidence to show why a reasonably prudent employee, with her
experience in a department where it was not uncommon for supervisors, as a
matter of discretion, to void the citations issued by subordinates, would have
believed the disappearance of citations she wrote gave credence to what
establishment operators told her about Bhatt=s tearing
up tickets.

Although Cotton directs this court=s
attention to Calix=s
testimony, his testimony does not support the objective prong of the good-faith
test.  Calix testified that, if Bhatt had
destroyed, torn up, or thrown away a citation before it was in the municipal
court system, there would have been no violation of the law; however, if Bhatt
had done so once the citation was in the system, there would have been a
violation.  Calix testified a document
was designated a Agovernment
document@ once Ait goes
through the system.@  Under both Calix=s
testimony regarding section 37.10 of the Penal Code and the unambiguous
language of that statute, if managers in the City of Houston Health Department,
in the course of their official duties, mark citations as void or decide not to
pursue them further, without destroying, concealing, removing, or otherwise
impairing the verity, legibility, or availability of the citations, this
conduct does not violate section 37.10.  See
Tex. Pen. Code Ann. 37.10(a).








Cotton also points to the following sentences in
the OIG investigative report:  AThis
investigation revealed sufficient evidence to confirm the original allegation
of [sic] Mr. Bhatt and several supervisor=s [sic]
destroying or dismissing citations.  This
investigation found, however, insufficient evidence to prove or disprove the
allegations linking Mr. Bhatt or anyone else to criminal activity in obtaining
illegal monetary benefits.@  Calix, the author of the report, however,
testified, A[A] ticket that=s
destroyed in the sense I wrote it down meaning it was voided, meaning that it
was not good at that time.  Not destroyed
in any sense of the word of shredding or tearing up, no, that=s not the
way I meant it.@








In short, the only facts Cotton reported involved
voiding C not
destroying C citations; and there is no
evidence a reasonably prudent employee in Cotton=s
circumstances would have believed the voiding of tickets was a violation of
law.  After reviewing the record under
the applicable standard of review, we conclude there is legally insufficient
evidence to support the trial court=s implied
finding that a reasonably prudent employee in similar circumstances would have
believed the facts Cotton reported were a violation of law.  See Harris County Precinct Four Constable Dep=t v. Grabowski, 922 S.W.2d 954, 956 (Tex. 1996)
(per curiam) (holding, although there was some evidence plaintiff subjectively
believed conduct he reported violated the law, there was legally
insufficient evidence this belief was reasonable); Lane v. Tex. Dept. of
Health, No. 03-02-00579-CV, 2003 WL 21750608, at *3B*6 (Tex.
App.CAustin
Jul. 30, 2003, pet. denied) (mem. op.) (stating there was legally insufficient
evidence plaintiff=s
subjective belief C that the
conduct she reported violated the law C was
objectively reasonable); Duvall v. Tex. Dept. of Human Servs., 82 S.W.3d
474, 482B83 (Tex.
App.CAustin 2002,
no pet.) (holding there was no evidence a reasonably prudent employee in
similar circumstances would have believed facts reported by plaintiff were a
violation of law); Tex. Dep=t of
Criminal Justice v. Terrell, 18 S.W.3d 272, 276B77 (Tex.
App.CTyler
2000, pet. denied) (reversing and rendering judgment following jury trial
because there was legally insufficient evidence a reasonably prudent employee
in similar circumstances would have believed facts reported by plaintiff were a
violation of law).

Although Cotton focuses on section 37.10 of the
Texas Penal Code in her arguments concerning good faith, she states in a
footnote in her brief that she Abelieved
Bhatt=s
favoritism with Indian restaurants resulted in kickbacks and bribery which are
clearly violations of law.@  To the extent Cotton asserts there is legally
sufficient evidence to support an implied finding by the trial court that a
reasonably prudent employee in similar circumstances would have believed the
facts she reported constituted a violation of criminal laws against bribery and
kickbacks, this argument lacks merit. 
The facts reported to the OIG by Cotton do not show that managers in the
City of Houston health department were accepting bribes or kickbacks.  Cotton does not state that any person was
accepting bribes or kickbacks.

Although Cotton reported Bhatt voided citations,
this is not by itself, a report of bribery. 
Bhatt=s voiding of citations could have
stemmed from a difference in enforcement philosophy between Bhatt and
Cotton.  In her OIG report, for example,
Cotton states, based on an Aunwritten
policy,@ she set
out to write as many citations for violations as she could against Stephen Food
Store (which was not an Indian-owned establishment) because that store refused
to close.  Although she states she
received permission from Hsu to write the citations, Bhatt apparently decided
on a different approach.  Cotton=s report
does not include her beliefs regarding Bhatt=s reasons
for voiding the citations, but there could have been explanations other than
bribery or kickbacks.  Stating Bhatt
voided the citations is not in any way equivalent to reporting Bhatt accepted
bribes or kickbacks from someone acting on behalf of Stephen Food Store.  Similarly, although Cotton stated some
establishment owners told sanitarians that Hsu or Bhatt would void citations
issued against these establishments, reporting this conduct on the part of the
establishment owners is not the same as stating Hsu and Bhatt are accepting
bribes or kickbacks from these owners.








III.  Conclusion

Having
determined that there is legally insufficient evidence to support the trial
court=s implied
finding that a reasonably prudent employee in similar circumstances would have
believed the facts reported by Cotton were a violation of law, we sustain the
City=s third
issue in this regard, and we need not address the City=s other
issues.  Accordingly, we reverse the
trial court=s judgment and render judgment
that Cotton take nothing from the City of Houston.

 

/s/        Eva M. Guzman

Justice

 

Judgment
rendered and Substitute Opinion filed July 28, 2005.

Panel
consists of Chief Justice Hedges and Justices Frost and Guzman.

 

 











[1]  See Tex.
Gov=t Code Ann. '' 554.001B.010 (Vernon 2004).





[2]  The court also
ordered that, if the City appealed the final judgment to the court of appeals,
it would be liable for an additional sum of $15,000 for work associated with
the appeal.  If the City appealed to the
Texas Supreme Court, it would be liable for $7,500 in addition to the $15,000.





[3]  OIG was
created in February 1998 and was the agency that completed the investigation
begun by Silverman=s complaint. 
Unless necessary to distinguish the two agencies, we refer to both as AOIG.@





[4]  According to a
March 17, 1998 memorandum, sanitarians were required to work at least fifteen
hours of overtime per week to reduce a backlog.





[5]  Although at
points both Munguia and Bhatt testified Munguia suggested or requested the QA,
both ultimately agreed Bhatt directed Munguia to do the QA audit.





[6]  At trial in
2002, the Fiesta bakery, cold deli, and coffee shop managers testified their
departments had been inspected only briefly or not at all on August 9,
1998.  One testified the Fiesta no longer
had a pizza bar.  The managers remembered
the inspection because Sundays were busy and it was unusual to have an
inspection on a Sunday.





[7]  There was also
evidence that on August 27, 1998, Bhatt directed a memo to human resources
manager Joe Kuhn recommending Cotton=s
indefinite suspension.





[8]  Cotton sued
the City in December 1998.  The First
Court of Appeals upheld the trial court=s denial
of the City=s plea to jurisdiction in 2000.  See City of Houston v. Cotton, 31
S.W.3d 823, 824 (Tex. App.CHouston [1st Dist.] 2000, pet. denied).   





[9]  The City also
states it appeals findings of fact the district court omitted and notes it
could not have filed a request for additional findings because the trial court
purportedly filed its findings of fact and conclusions of law after its plenary
period had expired.  The City does not
develop or explain the significance of these statements.  A trial court is not required to make
additional findings of fact and conclusions of law when they are directly
contrary to, or inconsistent with, the original findings and conclusions of the
trial court.  Starcrest Trust v. Berry,
926 S.W.2d 343, 354 (Tex. App.CAustin 1996, no writ).





[10]  Under the Act, a Alaw@ means (a) Aa state or federal statute;@ (b) Aan ordinance of a local
governmental entity;@ or (c) Aa rule adopted under a statute or
ordinance.@ 
Tex. Gov=t Code
Ann. ' 554.001(1) (Vernon 2004).  An employee need not prove an actual
violation of the law.  Llanes v.
Corpus Christi Indep. Sch. Dist.,
64 S.W.3d 638, 642 (Tex. App.CCorpus Christi 2001, pet. denied)
(citing City of Brenham v. Honerkamp, 950 S.W.2d 760, 763 (Tex. App.CAustin 1997, writ denied)).  However, for an employee to sustain a claim
under the Act, there must be some law prohibiting the conduct of which the
employee complains.  Id.  In other words, Ato recover under the Act, an
employee must have a good‑faith belief that a law, which in fact exists,
was violated.@ 
Id. at 643.