**AFFIRMED; Opinion Filed July 10, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01414-CV

### CITY OF DALLAS, Appellant
### V.
### D.R. HORTON – TEXAS, LTD., Appellee

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-14-00682-F**

## MEMORANDUM OPINION

Before Justices Fillmore, Myers, and Evans
Opinion by Justice Myers

The City of Dallas brings an interlocutory appeal of the trial court's order denying its plea to the jurisdiction in the suit brought by D.R. Horton – Texas, Ltd. seeking disannexation from the City. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West 2015). The City brings six issues contending the trial court erred by denying the plea to the jurisdiction. We affirm the trial court's order denying the plea to the jurisdiction.

### BACKGROUND

In 1971, the City annexed an area that was .7284 of a square mile, approximately 466.176 acres. In 2008, appellee owned about 267 acres of the area, which was more than fifty percent of the area. In 2008, appellee filed a petition with the City requesting that the City disannex the area because the City had not provided services to the area that were substantially equivalent to the services the City provided to similar areas. The City did not act on the petition, and appellee

took no further action at that time. Five years later, on September 3, 2013, appellee filed a second petition for disannexation. When the City did not act on this petition within ninety days, appellee brought suit against the City on January 24, 2014, seeking disannexation of the area. The City filed a plea to the jurisdiction asserting it was immune from suit and that the trial court lacked subject-matter jurisdiction over appellee's suit. The trial court held a hearing on the City's plea to the jurisdiction and denied the plea. The City now appeals.

## MUNICIPAL ANNEXATION ACT OF 1963

The parties agree that the Municipal Annexation Act of 1963 ("the Act") applies in this case because it was the statute under which the area was annexed in 1971. *See* TEX. REV. CIV. STAT. ANN. art. 970a (repealed 1987).[1] The Act permitted cities to annex unincorporated areas bordering the city. *Id.* § 7.A. The Act provided that if the city failed within three years after annexation to provide the annexed area with substantially equivalent governmental and proprietary services as the city provided other areas with similar population density, topography, and patterns of land utilization, then the owners of fifty percent or more of the land and a majority of the qualified voters in the annexed area could petition the city to disannex the area. *Id.* § 10.A.[2] If the city failed or refused to disannex the area within ninety days, then any signer

---

[1] *See* Act of Apr. 29, 1963, 58th Leg., R.S., ch. 160, 1963 Tex. Gen. Laws 447, 447–54, *repealed by* Act of May 1, 1987, 70th Leg., R.S., ch. 149, § 49(1), 1987 Tex. Gen. Laws 707, 1306 (adoption of Texas Local Government Code) (current provision codified at chapter 43 of the Texas Local Government Code).

[2] Section 10.A provides:

Sec. 10.A. From and after the effective date of this Act, any city annexing a particular area shall within three (3) years of the effective date of such annexation provide or cause to be provided such area with governmental and proprietary services, the standard and scope of which are substantially equivalent to the standard and scope of governmental and proprietary services furnished by such city in other areas of such city which have characteristics of topography, patterns of land utilization, and population density similar to that of the particular area annexed. In the event a city fails or refuses to provide or cause to be provided such services within the time specified herein, a majority of the qualified voters residing within such particular annexed area and the owners of fifty per cent (50%) or more of the land in such particular annexed area, which area must adjoin the outer boundaries of the city, may petition the governing body of such city to disannex such particular annexed area. Should the governing body of such city fail or refuse to disannex such particular annexed area within ninety (90) days after receipt of a valid petition, any one or more of the signers of such petition may, within sixty (60) days of the date of such failure or refusal, file in a district court of the district in which such city is located an action requesting that the particular annexed area be disannexed. Upon the filing of an answer in such cause by the governing body of such city, and upon application of either party, the case shall be advanced and heard without further delay, all in accordance with the Texas Rules of Civil Procedure. Upon hearing of the case, if the district court finds that a valid petition was filed with the city, that the particular annexed area is otherwise eligible for disannexation under the provisions of this Section, and that the standard and scope of governmental and proprietary services provided or caused to

of the petition could bring suit against the city within sixty days requesting that the area be disannexed. *Id.* If the trial court found that the city had failed to provide substantially equivalent governmental and proprietary services to the annexed area, then the court would enter an order disannexing the area. *Id.*

The petition for disannexation had to have attached to it "the sworn affidavit of any qualified voter who signed the petition" stating where and when the petition was posted in the annexed area and "the sworn affidavit of three (3) or more qualified voters signing the petition, if there be that many, stating the total number of qualified voters residing in the particular annexed area and the approximate total acreage within such particular annexed area." *Id.* § 10.C.[3]

---

be provided to such particular annexed area are not substantially equivalent to the standard and scope of governmental and proprietary services provided or caused to be provided other areas of such city having characteristics of topography, patterns of land utilization and population density similar to that of the particular annexed area, it shall enter an order disannexing such particular annexed area. Provided, however, that the right of disannexation provided for in this Section shall not be available to any particular annexed area which was lawfully within the city limits of a city at the time of the approval or sale of any general obligation bonds of the city if proceeds therefrom have been expended for capital improvements to serve such particular annexed area, so long as any such bonds are outstanding.

TEX. REV. CIV. STAT. ANN. art. 970a, § 10.A.

[3] Section 10.C provides:

C. The request and petition for disannexation provided for in Subsection A of this Section of this Act shall be made by the qualified voters and landowners signing and presenting to the City secretary a written petition requesting disannexation. The signatures to the petition need not be appended to one paper, but each signer shall sign his or her name in ink or indelible pencil, and each signer signing the petition as a qualified voter shall sign his or her name as it appears on the official copy of the current poll list or an official copy of the current list of exempt voters and each qualified voter shall note on such petition his or her residence address and the precinct number and serial number that appear on his or her poll tax receipt, exemption certificate, or such other voter registration certificate that may be provided for by law. Each landowner signing the petition shall note thereon opposite his or her name the approximate total acreage he or she owns within the particular annexed area. The petition shall describe the particular annexed area to be disannexed and have attached to it a plat of the particular annexed area. Prior to circulating the petition for disannexation among the qualified voters and landowners, notice of the petition shall be given by means of posting for ten (10) days a copy of the petition in three (3) public places in the particular annexed area and by publishing it for (1) issue in a newspaper or newspapers of general circulation servicing the particular annexed area at least fifteen (15) days prior to the circulation of the petition. Proof of posting and publication of the notice shall be made by attaching to the petition presented to the city secretary: (1) the sworn affidavit of any qualified voter who signed the petition stating the places where and the dates when the petition was posted, and (2) the sworn affidavit of the publisher of the newspaper or newspapers setting forth the name of the newspaper or newspapers and the issue and date in which the notice was published. In addition, there shall be attached to the petition the sworn affidavit of three (3) or more qualified voters signing the petition, if there be that many, stating the total number of qualified voters residing in the particular annexed area and the approximate total acreage within such particular annexed area.

*Id.* § 10.C.

**PLEA TO THE JURISDICTION**

In its first issue, the City contends the trial court erred by denying the City's plea to the jurisdiction, asserting the City is immune from appellee's suit. Political subdivisions, like the City, derive governmental immunity from the state's sovereign immunity when they perform governmental functions. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011). Governmental entities retain immunity from suit unless the immunity has been expressly waived by the legislature. *Id.* Legislative consent for suit must be "by clear and unambiguous language." TEX. GOV'T CODE ANN. § 311.034 (West 2013). The plaintiff must plead facts that affirmatively demonstrate that governmental immunity has been waived and that the trial court has subject matter jurisdiction. *City of Dallas v. Turley*, 316 S.W.3d 762, 767 (Tex. App.—Dallas 2010, pet. denied).

A plea to the jurisdiction may challenge the plaintiff's pleading, the existence of the jurisdictional facts alleged in the pleading, or both. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Id.* "We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Id.* When the defendant challenges the existence of jurisdictional facts, the defendant must meet the summary judgment standard of proof. *Id.* at 228. Under that standard, the defendant must present conclusive proof regarding a jurisdictional fact. *See id.*; *see also Unifund CCR Partners v. Watson*, 337 S.W.3d 922, 926 (Tex. App.—Amarillo 2011, no pet.). If the defendant meets this burden, the plaintiff must present sufficient evidence to show there is a disputed issue of material fact regarding the jurisdictional issue or the plea to the jurisdiction will be sustained. *Miranda*, 133 S.W.3d at 228; *City of Dallas v. Heard*, 252 S.W.3d 98, 102 (Tex. App.—Dallas 2008, pet. denied). If the defendant fails to present conclusive proof of a fact

negating jurisdiction, the plaintiff has no burden to present evidence on the jurisdictional issue. *Unifund*, 337 S.W.3d at 926.

The Act expressly permits a petitioner seeking disannexation to file suit against a city if the city does not timely disannex the area. Therefore, in this case, the Act waived the City's governmental immunity from suit if appellee alleged a valid claim for disannexation. *See Kaufman Cnty. v. Combs*, 393 S.W.3d 336, 345 (Tex. App.—Dallas 2012, pet. denied) ("Although governmental immunity does not shield a governmental entity from a valid takings claim, it does apply when a plaintiff does not allege a valid takings claim.").

## TIMELINESS OF FILING SUIT

In its second issue, the City contends the trial court erred by denying the plea to the jurisdiction because appellee's suit was time barred when appellee failed to file suit within sixty days of the City's refusal to disannex the area in 2008. *See Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 515 (Tex. 2012) ("a statutory prerequisite to suit . . . (such as timely filing a lawsuit) is jurisdictional when the defendant is a governmental entity").

The City asserts that when appellee filed its first petition for disannexation in 2008 and the City failed to disannex the area within ninety days, appellee had to file suit within sixty days or be forever barred from seeking disannexation under section 10 of the Act. The City argues that a person seeking disannexation that files a petition with a city but does not bring suit cannot file a second petition and then bring suit when the city denies that petition. Appellee asserts it timely filed its suit because it was filed within sixty days of the City's failure to grant the September 3, 2013 petition.

The statute is silent on whether landowners and voters in the annexed area can bring only one petition for disannexation or whether they can file a second petition if no one files suit after

–5–

the first petition.  We must construe the statute to determine whether multiple disannexation petitions may be brought.

> Statutory construction is a question of law we review de novo.  Our objective is to determine and give effect to the Legislature's intent, and "the truest manifestation of what lawmakers intended is what they enacted."  Proper construction requires reading the statute as a whole rather than interpreting provisions in isolation.  "[C]ourts should not give an undefined statutory term a meaning out of harmony or inconsistent with other provisions, although it might be susceptible of such a construction if standing alone."

*In re Mem'l Hermann Hosp. Sys.*, No. 14-0171, 2015 WL 2438752, at \*5 (Tex. May 22, 2015) (footnotes omitted) (quoting *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013); *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002)).

The statute does not restrict the number of petitions for disannexation that landowners and voters may file, and it does not appear that multiple petitions would render other parts of the statute unworkable.  Further, judicial imposition of a restriction on the number of petitions for disannexation would not further the legislature's intent in passing the statute.  It is clear from the statute that the legislature intended to permit cities to annex unincorporated areas and provide governmental and proprietary services to those areas.  The benefit of receiving those services comes at a cost—the annexed areas will be subject to the city's taxes and other statutes.  However, if the city fails to provide the annexed area with the services it provides similar areas, then the Act permits the landowners and voters to leave the city through disannexation.  The City's construction of the statute does not forward these purposes, while appellee's construction fits the legislative purpose of the Act.  If a city annexes an area and does not provide sufficient services, and the landowners and voters petition for disannexation but fail to timely file suit based on that petition, and the city continues not to provide sufficient services, we fail to see how the city is harmed by permitting a new petition for disannexation.  Instead, the city has reaped a windfall of tax revenue for the time that the area should have been disannexed.  Nor do we see a

reason why the landowners and voters should be bound to stay forever in a city when the city fails to provide sufficient services merely because previous petitioners did not file suit.[4] For us to impose a restriction on the number of petitions for disannexation that may be filed when such a restriction is not present in the statute and is not necessary for the operation of the statute or the fulfillment of the legislature's intent would constitute legislating from the bench. Accordingly, we agree with appellee that the statute does not bar landowners and voters from bringing a second petition when suit was not filed under the first petition.

Appellee filed its second petition with the City on September 3, 2013. The City was deemed to have refused the petition when it failed to disannex the area by December 2, 2013. Appellee then had sixty days, until January 31, 2014, to file suit in district court. Appellee filed suit on January 24, 2014. We conclude appellee timely filed suit. We overrule the City's second issue.

**COMPLIANCE WITH THE REQUIREMENTS FOR THE PETITION**

In its third, fifth, and sixth issues, the City contends appellee's suit is barred because no qualified voter signed the petition or the attached affidavits. The City contends the failure to have a qualified voter sign the petition, the affidavit of posting, and the affidavit of voters and acreage meant that appellee did not have standing, the suit was not ripe, the suit did not meet the jurisdictional prerequisites, and the trial court lacked subject-matter jurisdiction over the case.

The City asserts that because no voters resided in the area, appellee could not meet the standing requirement in section 10.A that a petition for disannexation may be brought by "a majority of the qualified voters residing within such particular annexed area and the owners of fifty per cent (50%) or more of the land . . . ." We disagree. When there are no voters in the

---

[4] In this case, the petitioner for both petitions was the same—appellee. However, the City's reasoning would also bar other landowners and voters from seeking disannexation under a second petition even if they did not own or reside on the property at the time of the first petition.

area, a majority of zero voters is zero. Appellee owned more than fifty percent of the area to be disannexed. Therefore appellee, joined by a majority of zero voters, had standing to bring the petition for disannexation.

The City also asserts that section 10.C required that a qualified voter residing in the area sign the petition for disannexation and the affidavits of posting and of voters and acreage. In this case, the parties stipulated that no qualified voter resides in the area, and no qualified voter signed the second petition. The only signatory to the second petition was David Booth, who signed as assistant vice president of appellee's general partner. Booth also signed the Affidavit of Voters and Acreage. The Affidavit of Posting was signed by Elsie Thurman.[5]

Viewing the Act as a whole, we disagree with the City's interpretation of the Act as requiring a voter to sign the petition and the attached affidavits because the City's interpretation of that language would make other parts of the Act unworkable. Section 8.A of the Act provides that if a city refused to allow an area within the city's extraterritorial jurisdiction to incorporate, then

> a majority of the resident voters, if any, in the territory of such proposed city and the owners of fifty per cent (50%) or more of the land in such proposed city may petition the governing body of such city and request annexation by such city.

*Id.* § 8.A.[6] This provision permitted the landowners to seek annexation by a city even if no voter resided in the territory. Section 9 of the Act set forth the requirements for a petition requesting

---

[5] Thurman also signed the cover letter sent to the City with the petition and affidavits. The letterhead of the cover letter was for Land Use Planning & Zoning Services. The record does not disclose what the relationship was, if any, between that company and appellee.

[6] Section 8.A provides:

Sec. 8. A. No city may be incorporated within the area of the extraterritorial jurisdiction of any city without the written consent of the governing body of such city. Should such governing body refuse to grant permission for the incorporation of such proposed city, a majority of the resident voters, if any, in the territory of such proposed city and the owners of fifty per cent (50%) or more of the land in such proposed city may petition the governing body of such city and request annexation by such city. Should the governing body of such city fail or refuse to annex the area of such proposed city within six (6) months from the date of receipt of such petition, proof of such failure or refusal shall constitute authorization for the incorporation of such proposed city insofar as the purposes of this Subsection are concerned. Written consent or authorization for the incorporation of a proposed city, insofar as the provisions of this Subsection are concerned, shall mean only authorization to initiate incorporation proceedings for such proposed city as otherwise provided by law. The provisions of this Subsection shall apply only to the area of a proposed city which lies within the extraterritorial jurisdiction of such city.

annexation under section 8.A. Those requirements included the same requirement for the signing of the petition and the affidavits of posting and of voters and acreage set forth in section 10.C for a petition for disannexation. Like the petition for disannexation, the Act states that a petition for annexation under section 8.A be signed by landowners and voters and that voters sign the affidavits of posting and of voters and acreage.[7] To strictly construe section 9 as requiring a petition for annexation under section 8.A be signed by a voter and that voters sign the attached affidavits would render meaningless section 8.A's authorization for landowners to bring a petition for annexation when no voter resides in the territory. A fundamental tenet of statutory construction is that courts "avoid adopting an interpretation that 'renders any part of the statute meaningless.'" *City of Dallas v. TCI W. End, Inc.*, No. 13-0795, 2015 WL 2147986, at *2 (Tex. May 8, 2015) (per curiam) (quoting *Crosstex Energy Servs, L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 390 (Tex. 2014)). To avoid rendering part of section 8.A meaningless, we interpret the requirements that a voter sign the petition and affidavits to require a voter's signature if a voter resides in the area. If no voter resides in the area, then the affidavits need not be signed by a voter, and the requirement that a voter sign the petition does not apply.

---

TEX. REV. CIV. STAT. ANN. art. 970a, § 8.A.

[7] Section 9 provides:

Sec. 9. The petition for annexation provided for in Subsection A of Section 8 of this Article and the petition requesting the availability of services provided for in Subsection B of Section 8 of this Article shall be made by the voters and landowners signing and presenting to the city secretary or clerk a written petition requesting annexation or requesting such services. The signatures to the petition need not be appended to one paper, but each signer shall sign his or her name in ink or indelible pencil, and each signer signing the petition as a voter shall sign his or her name as it appears on the official copy of the current poll list or an official copy of the current list of exempt voters and each voter shall note on such petition his or her residence address and the precinct number and serial number that appear on his or her poll tax receipt, exemption certificate, or such other voter registration certificate that may be provided for by law. Each landowner signing the petition shall note thereon opposite his or her name the approximate total acreage he or she owns within the territory. The petition shall describe the territory to be annexed or the territory to which such services are requested to be made available and have attached to it a plat of the territory. Prior to circulating the petition for annexation or such services among the voters and landowners, notice of the petition shall be given by means of posting for ten (10) days a copy of the petition in three (3) public places in the territory and by publishing it for one (1) issue in a newspaper of general circulation serving the territory at least fifteen (15) days prior to the circulation of the petition. Proof of posting and publication of the notice shall be made by attaching to the petition presented to the city secretary or clerk: (1) the sworn affidavit of any voter who signed the petition, stating the places where and the dates when the petition was posted; and (2) the sworn affidavit of the publisher of the newspaper setting forth the name of the newspaper and the issue and date when the notice was published; (3) in addition, there shall be attached to the petition the sworn affidavit of three (3) or more voters signing the petition, if there be that many, stating the total number of voters residing in the territory and the approximate total acreage within the territory.

*Id.* § 9.

We know of no reason not to apply the same interpretation to the nearly identical language in section 10.C. *See Needham*, 82 S.W.3d at 318 ("[C]ourts should not give an undefined statutory term a meaning out of harmony or inconsistent with other provisions, although it might be susceptible of such a construction if standing alone."). Accordingly, we conclude that the requirements of section 10.C that at least one voter sign the disannexation petition and that a voter sign the affidavits of posting and of voters and acreage do not apply when no voter resides in the area sought to be disannexed. Therefore, in this case, the fact that a voter did not sign the petition for disannexation or the affidavits did not deprive appellee of standing to bring the suit for disannexation, it did not render the suit unripe, and it did not deprive the trial court of subject-matter jurisdiction over the suit.

The City cites two cases in support of its assertion that appellee's petition had to be signed by a voter: *Freeman v. Town of Flower Mound*, 173 S.W.3d 839 (Tex. App.—Fort Worth 2005, no pet.), and *Smith v. City of Brownwood*, 161 S.W.3d 675 (Tex. App.—Eastland 2005, no pet.). In those cases, landowners sought disannexation for their own properties, which were less than half of the areas that had been annexed. *See Freeman*, 173 S.W.3d at 839 (seeking disannexation of 1,200 acres out of 5,044 acres); *Smith*, 161 S.W.3d at 677 (seeking disannexation of 13 out of 153 acres). The issue before the courts of appeals was whether the statute, section 43.141 of the Texas Local Government Code, permitted partial disannexation. *See* TEX. LOC. GOV'T CODE ANN. § 43.141(a) (West 2008). The courts held the statute required a majority of voters of an entire annexed area to seek disannexation and that partial disannexation was not permitted under the statute. *See Freeman*, 173 S.W.3d at 841; *Smith*, 161 S.W.3d at 679–80. In this case, however, appellee seeks disannexation of the entire annexed area, not just its own property. Moreover, the statute on which the parties sought disannexation, section 43.141 of the local government code, is distinguishable from section 10 of the Act.

Section 43.141 of the local government code states that the petition for disannexation may be brought by voters only. The statute does not permit landowners who are not voters in the area to seek disannexation. *See* TEX. LOC. GOV'T CODE ANN. § 43.141(a) ("A majority of the qualified voters of an annexed area may petition the governing body of the municipality to disannex the area . . . ."). Because the issue before the courts and the statute they applied in those cases were so different from the issue and statute before us in this case, *Freeman* and *Smith* are distinguishable.

We overrule the City's third, fifth, and sixth issues.

## BOND VALIDATION SUIT

In its fourth issue, the City contends the trial court lacked subject-matter jurisdiction over the suit because a bond-validation suit precluded appellee's challenge to the City's boundaries.

In 2001, the City brought suit under the Expedited Declaratory Judgment Act (EDJA) seeking validation of public securities. *See* TEX. GOV'T CODE ANN. §§ 1205.001–.152 (West 2000). The trial court rendered a final judgment approving the bonds.

Section 1205.151 provides that a judgment in an EDJA suit is binding and operates as a permanent injunction against the filing of proceedings "contesting the validity of . . . each matter that could have been raised" in the suit on all persons residing or owning property in the city issuing the bonds. *Id.* § 1205.151(b)(4)(B), (c)(3); *see also id.* § 1205.023(2) (EDJA suit is class action binding all persons who own property or reside in bond issuer's territory). Section 1205.021(2)(B) states, "An issuer may bring an action under this chapter to obtain a declaratory judgment as to: . . . (2) the legality and validity of each public security authorization relating to the public securities, including if appropriate: . . . (B) the organization or boundaries of the issuer . . . ." *Id.* § 1205.021(2)(B). Section 1205.061(a)(1) provides that a trial court "may enjoin the commencement, prosecution, or maintenance of any proceeding that contests the

–11–

validity of: (1) any organizational proceeding or boundary change of the issuer . . . ." *Id.* § 1205.061(a)(1). Contrary to the City's argument, a suit for disannexation is not a challenge to the validity of a city's existing boundaries. Voters and landowners seeking disannexation necessarily admit they reside or their property is located within the city's boundaries. Instead, a suit for disannexation is a claim that a city is not entitled under the law to continue to maintain jurisdiction over the area.

Appellee does not dispute that the area was within the City's boundaries in 1998. Nor does appellee contest the validity of the 1971 annexation that changed the City's boundaries to include the area in the City. Furthermore, the City does not explain how appellee's suit for disannexation affects "the legality and validity" of the bonds issued in 1998. *See id.* § 1205.021(2). The City states in its brief that "[a]ny change in the boundaries after the validation affects the tax base on which the bonds were validated." But the City does not explain how a change in the City's boundaries or tax base after the judgment in the EDJA suit would void or otherwise affect the validity of the bonds, and the City did not cite any authority in support of this statement. Nor did the City cite any evidence in the record that would show the disannexation of this area would affect the City's tax base or threaten the validity of the bonds. *See* TEX. R. APP. P. 38.1(i) (argument in appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). We conclude that sections 1205.061 and 1205.151 do not bar appellee's suit for disannexation.

The City cites two cases, *City of Lubbock v. Isom*, 615 S.W.2d 171, 172 (Tex. 1981) (per curiam), and *Taxpayers for Sensible Priorities v. City of Dallas*, 79 S.W.3d 670 (Tex. App.— Dallas 2002, pet. denied). In *City of Lubbock*, a participant in an EDJA suit did not appeal and later sought to bring a bill of review challenging the validity of the EDJA judgment approving the issuance of bonds by the city. *City of Lubbock*, 615 S.W.2d at 171–72. The supreme court

–12–

determined that the participant was barred from bringing the bill of review because the statute imposed a permanent injunction against suits contesting the validity of the bonds and barred the action. The *City of Dallas* case involved the 1998 bond election relied on by the City in this case. In that case, the plaintiffs sued the City asserting the City had not used the bond funds in the manner described in pamphlets the City had issued to set out the bond issues in the election. The plaintiffs sought an injunction to require the City to spend the proceeds from the bonds in the manner approved by the voters. *City of Dallas*, 79 S.W.3d at 673. Both cases involved challenges to the validity of the bond programs or the cities' use of the bond funds. In this case, however, appellee does not even mention the bonds in its suit, much less challenge their validity. *City of Dallas* and *City of Lubbock* are distinguishable.

We conclude that the bond validation suit did not bar appellee's suit for disannexation. We overrule the City's fourth issue. We also conclude that the City has not shown the trial court erred by denying the City's plea to the jurisdiction. We overrule the City's first issue.

## CONCLUSION

We affirm the trial court's order denying the City's plea to the jurisdiction.

/Lana Myers/
LANA MYERS
141414F.P05                                     JUSTICE

–13–



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

CITY OF DALLAS, Appellant

No. 05-14-01414-CV        V.

D.R. HORTON - TEXAS, LTD., Appellee

On Appeal from the 116th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-14-00682-F.
Opinion delivered by Justice Myers. Justices Fillmore and Evans participating.

In accordance with this Court's opinion of this date, the order of the trial court denying the plea to the jurisdiction is **AFFIRMED**.

It is **ORDERED** that appellee D.R. Horton - Texas, Ltd. recover its costs of this appeal from appellant City of Dallas.

Judgment entered this 10th day of July, 2015.